686 A.2d 1249

B.F. AND K.L.F., A MINOR BY HER NEXT FRIEND, B.F., PLAIN-TIFFS–APPELLANTS, v. DIVISION OF YOUTH AND FAMILY SERVICES, WILLIAM WALDMAN, SUSAN DURGY, SUZANNE LA TOURNOUS, MANUEL RODRIGUEZ, CAROL PRINTZ, CYNTHIA D.H. SMITH, RICHARD PURCELL, MARY TERRITO, JODI PATTON, KAREN BACKIEL, AND MARY NICASTRO, EMPLOYEES OR FORMER EMPLOYEES OF THE DIVISION OF YOUTH AND FAMILY SERVICES, EACH IN THEIR INDIVIDUAL CAPACITY; ROBERT DEL TUFO, LAUREN F. CARLTON, MARCIA A. MEMBRINO, MAGALI M. FRANCOIS, ANDREA M. SILKOWITZ, AND BARBARA A. HARNED, EMPLOYEES OF THE OFFICE OF THE ATTORNEY GENERAL, EACH IN

THEIR INDIVIDUAL CAPACITY, MARTHA H. PAGE, DEFEN-
DANTS–RESPONDENTS, AND HACKENSACK MEDICAL CEN-
TER, AND MARIA LOPEZ, EMPLOYEE AND/OR AGENT OF
HACKENSACK MEDICAL CENTER, IN HER INDIVIDUAL CA-
PACITY, AND CAROL ANN PERSONETTE, FORMER ACTING
GUARDIAN AD LITEM FOR K.L.F., DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued September 26,[1] 1996—Decided January 15, 1997.

---

[1] This appeal, originally scheduled to be argued September 25, 1996, was argued telephonically September 26, 1996.

Before Judges MUIR, KLEINER, and COBURN.

*Patricia E. Apy* argued the cause for appellants (*Paras, Apy & Reiss,* attorneys; *Chattman, Gaines & Stern,* of counsel; *Ms. Apy, Douglas J. Paul, Gary H. Levine,* and *Christine C. Cockerill* on the brief).

*Paul R. Kenny,* Deputy Attorney General, argued the cause for respondents (*Peter Verniero,* Attorney General, attorney; *Mr. Kenny,* on the brief).

The opinion of the court was delivered by

COBURN, J.S.C. (temporarily assigned).

Plaintiffs seek damages for alleged violations of their civil rights under the *Federal Civil Rights Act,* 42 *U.S.C.A.* § 1983. They also claim damages under the New Jersey Constitution and various forms of tort. The state actions all concern the same conduct of defendants which form the basis of the federal civil rights action. The case arises from the unsuccessful efforts of the Division of Youth and Family Services (DYFS) to terminate the parental rights of plaintiff B.F. with respect to her daughter, plaintiff K.L.F. This prior litigation was eventually resolved by the Supreme Court of New Jersey. *Matter of Guardianship of K.L.F.,* 129 *N.J.* 32, 608 *A.*2d 1327 (1992). In essence, relying upon statements of the Court in *K.L.F.,* plaintiffs contend that the defendants failed to properly carry out the state statutory mandates governing actions by DYFS for termination of parental rights.

The defendants remaining in the case, DYFS, DYFS employees, the Attorney General and the deputy attorneys general who represented DYFS in the prior litigation, moved for summary judgment on a number of grounds, not including the entire controversy doctrine, which had not been pled as a defense. Nevertheless, the trial court, acting *sua sponte,* entered judgment for defendants pursuant to its understanding of the entire controversy doctrine and failed to resolve the grounds for summary judgment pressed by defendants. Plaintiffs appeal.

■ The entire controversy doctrine is inapplicable. Thus, it cannot support the judgment entered. However, "[a]n appellate court is necessarily concerned with the propriety of the action appealed from rather than with the reasons advanced by the court below in support thereof...." *Marchitto v. Central R. Co. of N.J.*, 9 *N.J.* 456, 463, 88 *A.*2d 851 (1952), overruled on other grounds, *Donnelly v. United Fruit Co.*, 40 *N.J.* 61, 190 *A.*2d 825 (1963). Consequently, it is our responsibility to "consider whether any of the grounds advanced by the defendants in support of their motion justified the trial court's judgment of dismissal." *Ibid.* Since we are satisfied defendants were entitled to prevail, though not on the basis of the entire controversy doctrine, the judgment is affirmed.

## I

The facts which form the basis of plaintiffs' present action are fully set forth in the Supreme Court's opinion in *K.L.F., supra,* and need not be repeated here. A few points, however, ought to be noted. The prior litigation established that plaintiff B.F. had entered into a voluntary contract with DYFS for temporary custody in the agency and placement of her daughter in temporary foster care. *K.L.F., supra,* 129 *N.J.* at 35, 608 *A.*2d 1327. She never "abandoned" her daughter. *Id.* at 38–39, 608 *A.*2d 1327. However, eighteen months did pass before she contacted DYFS in an effort to regain custody. *Id.* at 35, 608 *A.*2d 1327. By then DYFS had decided to bring a legal action for guardianship and so advised B.F. *Id.* at 35–36, 608 *A.*2d 1327. Unfortunately, another nine months passed before DYFS instituted the suit. *Id.* at 46, 608 *A.*2d 1327. With respect to DYFS's response to B.F.'s request for reunification with her daughter, the Court said.

If the agency wanted to retain custody despite her request, it was required to seek a court order authorizing it to do so. *N.J.S.A.* 30:4C–12. To the extent the Division's decision to refuse B.F. custody or contact with her child was based on its doubts about B.F.'s parental fitness, it was obliged by law to obtain a court order authorizing its own continued and exclusive custody over the child. DYFS was not empowered unilaterally to displace B.F. as a parent without judicial approval. *See N.J.S.A.* 30–4C–12 (conditioning order taking custody of child on finding that

"parent ... is grossly immoral or unfit."); *N.J.S.A.* 30:4C–58 (requiring periodic review of Child Placement Review Board to determine whether out-of-home placement is in the child's best interest); *see also Santosky v. Kramer*, 455 *U.S.* 745, 753, 102 *S.Ct.* 1388, 1395, 71 *L.Ed.*2d 599, 606 (1982) (constitutional protection afforded to rights of natural parents is not diminished by fact that "they have not been model parents or have lost temporary custody of their child to the State").

[*Id.* at 40, 608 *A.*2d 1327.]

The conduct of DYFS was also criticized in Justice Clifford's concurring opinion:

More specifically: (1) as a matter of law, DYFS's efforts at reunification during the one-year period preceding its decision to forego reunification plans fell short of the diligent-efforts standard of *N.J.S.A.* 30:4C–15(d), and (2) none of the evidence below indicated that the child had suffered damage from her non-existent relationship with B.F., see *[In Matter of Guardianship of] J.C., supra*, 129 *N.J.* [1] at 29–30, 608 *A.*2d 1312 [(1992)] (Clifford, J., concurring). Thus, because the psychological bonding between K.L.F. and her pre-adoptive family during the period following DYFS's refusal to allow visitation resulted from an improper denial of visitation rights, consideration of that bonding by the trial court would similarly have been improper.

I note as well that the agency failed to demonstrate compliance with the Child Placement Review Act, *N.J.S.A.* 30:4C–50 to—65, including those provisions requiring periodic review of agency strategy. See *N.J.S.A.* 30:4C–58.1. Had DYFS properly undertaken that review in this case, the Family Part might have thwarted the bonding that occurred after an unjustified abandonment of the statutory goal of reunification.

[*Id.* at 47, 608 *A.*2d 1327.]

Although plaintiffs complain here about the original placement as being something other than voluntary, voluntariness was fully litigated and determined in *K.L.F.* The balance of their case relies upon the above mentioned criticisms of DYFS and their assertion that DYFS and its employees and the Attorney General and his deputy attorneys general should be held responsible for damages because they continued to litigate the case to the Supreme Court after having lost in the trial court and then in the Appellate Division.

II

We have previously noted our appreciation of the "far reach accorded the entire controversy doctrine" by the Supreme Court. *Perry v. Tuzzio*, 288 *N.J.Super.* 223, 228, 672 *A.*2d 213

(App.Div.1996). However, we have also concluded that in some circumstances the nature of the prior litigation prohibited application of the doctrine as a bar to the subsequent proceeding. *Cafferata v. Peyser,* 251 *N.J.Super.* 256, 597 *A.2d* 1101 (App.Div. 1991); *Perry v. Tuzzio, supra.* In *Prevratil v. Mohr,* 145 *N.J.* 180, 195, 678 *A.2d* 243 (1996), the Court approved *Cafferata* expressly and *Perry* by implication. These cases indicate that the entire controversy doctrine is inapplicable to actions brought by DYFS for the termination of parental rights pursuant to *N.J.S.A.* 30:4C–15 and 20.

In *Cafferata* we held plaintiff's medical malpractice case was not barred by the entire controversy doctrine by reason of his *"pro se* settlement of a prior Special Civil Part action brought by the defendants-physicians' professional association to recover its bill for services for the same medical procedure of which the malpractice suit complains." 251 *N.J.Super.* at 257, 597 *A.2d* 1101. We observed:

> In sum, the problems inherent in an inequality of forum, which concerned the Court in *Thornton [v. Potamkin Chevrolet,* 94 *N.J.* 1, 462 *A.2d* 133 (1983)], *supra,* are at the heart of the matter here as well. The ability of the judicial system to cope effectively with the volume of minor commercial litigation with which it must deal is advanced by the informality of mediation-type proceedings in which *pro se* litigants are able quickly, inexpensively, expeditiously, and with minimum resort to legal counsel and judicial intervention, to resolve specifically stated and narrowly defined small claims, whether or not instituted in the small claims division. These proceedings were never intended to have preclusionary consequences beyond their own scope. It is not only unfair that they should do so, but if they do, the legitimacy of small claims processing will be seriously undermined. It would obviously be counterproductive in the extreme were a preclusionary rule enforced in such a way as to penalize, without any concomitant benefit to the parties or to the system, a *pro se* litigant's participation in the small claims mediation process or other expedited processing mechanism. Such enforcement would convert the entire controversy doctrine into a trap for the unsuspecting. That is not its function.

> [*Id.* at 262–63, 597 *A.2d* 1101.]

In *Perry* we refused to give preclusive effect to a summary proceeding involving a hearing on exceptions to an executor's account when the exceptant to the account brought a later action

against the employer of the executor for accounting malpractice. We had this to say:

> Our difficulty here lies in the fact that the original action was not a plenary action at law but rather a piece of a probate action—a hearing on exceptions to an executor's account. The question is whether an exceptant to an accounting is obliged in that summary proceeding to join all persons, uninvolved as they may be in the probate proceeding, who have any transactional relationship to the subject of the exception—irrespective of the nature of that relationship, irrespective of a right to jury trial and full discovery which any such person might have, and irrespective of the burden such a requirement may impose on the orderly procedure for the administration of decedent's estate.

> We doubt that the entire controversy doctrine was ever intended to go this far since its application in that situation is so basically inconsistent with the limited nature of an accounting proceeding.

> [288 *N.J.Super.* at 229, 672 *A.*2d 213.]

With the principles of *Cafferata* and *Perry* in mind, we turn to the nature of actions for the termination of parental rights under *N.J.S.A.* 30:4C–15 and 20.

In *New Jersey Div. of Youth and Family Services v. A.W.*, 103 *N.J.* 591, 599, 512 *A.*2d 438 (1986), the Court noted that "[t]ermination of parental rights presents the legal system with an almost insoluble dilemma." The Court further explained:

> On the one hand, we emphasize the inviolability of the family unit, noting that "[t]he rights to conceive and to raise one's children have been deemed 'essential,' * * * 'basic civil rights of man,' * * * and '[r]ights far more precious * * * than property rights' * * *." *Stanley v. Illinois,* 405 *U.S.* 645, 651, 92 *S.Ct.* 1208, 1212, 31 *L.Ed.*2d 551, 558 (1972) (citations omitted). The interests of parents in this relationship have thus been deemed fundamental and are constitutionally protected. On the other hand, it has been recognized "that a state is not without constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized."

> [*Id.* at 599, 512 *A.*2d 438 (citation omitted).]

Because of the supreme gravity of these actions, the Court Rules and the case law emphasize the importance of expeditious resolution. A complaint instituted by DYFS for termination of parental rights is a summary action. *R.* 5:12; *R.* 4:67. Furthermore, *R.* 5:12–4(a) expressly requires "prompt disposition" of the case and *R.* 5:8–6 provides that custody cases shall be set for trial "no later than 3 months after the last responsive pleading." The Supreme Court has reiterated the importance of swift disposition

of these cases. *Matter of Guardianship of J.C.,* 129 *N.J.* 1, 7–8, 608 *A.*2d 1312 (1992); *K.L.F., supra,* 129 *N.J.* at 46, 608 *A.*2d 1327; *A.W., supra,* 103 *N.J.* at 618, 512 *A.*2d 438. Requiring motion practice for the purpose of avoiding the preclusive effect of the entire controversy doctrine would obviously cause unwarranted delay in these cases so sensitive to the effects of delay.

■ Since these are summary actions, we also note there is "no readily apparent procedural mechanism" for joining new parties, despite defendants' claim here that the failure to so join them should bar this subsequent civil rights and tort suit. *Perry v. Tuzzio, supra,* 288 *N.J.Super.* at 231, 672 *A.*2d 213. This additional reason for rejecting a role for the entire controversy doctrine in termination cases is not inconsistent with *Perretti v. Ran–Dav's County Kosher,* 289 *N.J.Super.* 618, 674 *A.*2d 647 (App.Div.1996). That case only required that the defendant in a summary action bring any counterclaims to the court's attention. It did not involve, as does this case, third-party actions. Moreover, the defendants here who are insisting that they should have been third-parties in the termination case do not even qualify as "parties with a material interest, *i.e.,* those who can affect or be affected by the judicial outcome of the controversy." *Circle Chevrolet v. Giordano, Halleran & Ciesla,* 142 *N.J.* 280, 289, 662 *A.*2d 509 (1995). The effect upon them of the prior litigation could be at most indirect, which we believe is beyond the concerns of *Circle Chevrolet.*

There is at least one other reason for rejecting application of the entire controversy doctrine in termination cases: by and large the parent and child are represented by court appointed rather than privately retained counsel. Furthermore, the services of these appointed attorneys "are neither compensable nor payable by any state entity." *New Jersey Div. of Youth & Family Services v. D.C.,* 219 *N.J.Super.* 644, 647, 653–63, 530 *A.*2d 1309 (App.Div.1987), *aff'd,* 118 *N.J.* 388, 571 *A.*2d 1295 (1990). It would be unfair to burden such attorneys with the additional work of pursuing other causes of action.

Finally, we observe that the entire controversy doctrine is an affirmative defense which is "waived if not pleaded or otherwise timely raised." *Brown v. Brown*, 208 *N.J.Super.* 372, 384, 506 *A.*2d 29 (App.Div.1986). Thus, in this case the trial court erred in raising the matter on its own motion.

### III

Defendants contend they have either qualified or absolute immunity as a matter of law with respect to plaintiffs' claims under 42 *U.S.C.A.* § 1983.

The DYFS employees and the deputy attorneys general contend they are entitled to qualified immunity as a matter of law because they did not violate a clearly established federal statutory or constitutional right. In *Kirk v. City of Newark*, 109 *N.J.* 173, 536 *A.*2d 229 (1988), the Court explained the applicable principles of law:

> *Harlow v. Fitzgerald*, 457 *U.S.* 800, 102 *S.Ct.* 2727, 73 *L.Ed.*2d 396 (1982), involved an action by a civilian employee of the Department of the Air Force, who claimed that senior aides to President Nixon had conspired with the President in violation of the employee's first amendment rights to dismiss him in retaliation for testifying before a congressional committee about defense contract overruns. After rejecting defendant's claim of absolute immunity, the *Harlow* Court addressed both the standard to determine claims of qualified immunity and the role of courts in making that determination. First, with respect to the standard, the Court excised the subjective test for overcoming the qualified immunity of government officials. No longer would it be possible for a plaintiff to overcome the "good-faith" defense of qualified immunity by establishing that a government official had acted with "malice." *Harlow, supra,* 457 *U.S.* at 817, 102 *S.Ct.* at 2737, 73 *L.Ed.*2d at 410. Second, until *Harlow,* by asserting that a government official had acted maliciously, a plaintiff could raise disputed questions of fact that precluded summary judgment and required resolution by the jury. *Id.* at 816, 102 *S.Ct.* at 2737, 73 *L.Ed.*2d at 409. The "substantial costs" that "attend the litigation of the subjective good faith of government officials," the court found, imposed too high a social cost. Henceforth, "bare allegations of malice," *id.* at 817, 102 *S.Ct.* at 2738, 73 *L.Ed.*2d at 410, would not suffice, and a government official would be entitled to qualified immunity unless his or her conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 *S.Ct.* at 2738, 73 *L.Ed.*2d at 410. The test was to be whether the currently applicable law was clearly established at the time the action occurred, an issue that could be determined on a motion for summary judgment. *Ibid.* By so formulating the test, the court intended to "avoid excessive disruption of government and

permit the resolution of many insubstantial claims on summary judgment." *Ibid.*
If the law was clearly established, the immunity defense would ordinarily fail. *Id.*
at 818–19, 102 *S.Ct.* at 2738, 73 *L.Ed.*2d at 411.

[*Id.* at 180–81, 536 *A.*2d 229.]

There is no contention here that any federal statute is involved. Consequently, we must consider whether a clearly established constitutional right existed. Plaintiffs assert, in essence, a constitutional right to "familial integrity." The difficulty with that position is that all of the authorities submitted for our consideration reject the concept as a basis for a Section 1983 case. *See, e.g., Hodge v. Jones,* 31 *F.*3d 157 (4th Cir.1994); *Frazier v. Bailey,* 957 *F.*2d 920 (1st Cir.1992); *Gardner By Gardner v. Parson,* 874 *F.*2d 131 (3rd Cir.1989); *Meyers v. Contra Costa County Dept. of Soc. Serv.,* 812 *F.*2d 1154 (9th Cir.1987), *cert. denied,* 484 *U.S.* 829, 108 *S.Ct.* 98, 98 *L.Ed.*2d 59 (1987). In *Frazier* the court said:

We agree with other courts that while there may be a due process right of "familial integrity" of some dimensions, the dimensions of this right have yet to be clearly established. Moreover, to the extent it is well-defined, the liberty interest is not absolute but rather balanced against the governmental interest. In such circumstances we find that Frazier has failed to show that the steps taken by Stevens and Flinker in responding to the allegations of sexual abuse "violated the nebulous right of family integrity." Because the right to family integrity has not been so particularized as to put defendants on notice that their conduct was unlawful, Stevens and Flinker are entitled to qualified immunity as a matter of law.

[957 *F.*2d at 931 (citation omitted).]

Nor has our independent research revealed the existence of any case which would support the plaintiffs' Section 1983 action. Therefore, these defendants are entitled to qualified immunity as a matter of law.

DYFS itself is absolutely immune because it is not a "person" under Section 1983. *Fuchilla v. Layman,* 109 *N.J.* 319, 324, 537 *A.*2d 652 (1988), *cert. denied,* 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L.Ed.*2d 51 (1988).

The Attorney General is absolutely immune with respect to this claim since there is no allegation of personal involvement. *Respondeat superior* cannot support a Section 1983 action. *Rizzo v. Goode,* 423 *U.S.* 362, 370–71, 96 *S.Ct.* 598, 603–04, 46 *L.Ed.*2d 561, 569 (1976).

The deputy attorneys general have an additional basis for absolute immunity, as well, because they were clearly performing a judicial function in initiating and litigating the termination case. *Hayes v. Mercer County,* 217 *N.J.Super.* 614, 619–20, 526 *A.*2d 737 (App.Div.), *certif. denied,* 108 *N.J.* 643, 532 *A.*2d 226 (1987).

IV

Plaintiffs contend that they are entitled to damages for violation of their state constitutional rights. They also cite tort theories which they describe as fraudulent inducement, malicious prosecution, abuse of process, and intentional infliction of emotional distress. As previously observed, the factual basis for these claims is the same conduct complained of in the Section 1983 action. This aspect of the litigation is governed by the New Jersey Tort Claims Act. *N.J.S.A.* 59:1–1 *et seq.*

■ In particular, the state officials assert entitlement to qualified immunity from the state constitutional and common law claims under *N.J.S.A.* 59:3–3:

A public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.

Under this section, immunity may be established "if the public employee can show either objective or subjective good faith." *Bombace v. City of Newark,* 125 *N.J.* 361, 374, 593 *A.*2d 335 (1991).

In *Hayes v. Mercer County, supra,* the court said:

To prevail on a motion for summary judgment, a public employee need not establish his subjective, *i.e.,* actual, good faith if his conduct was objectively reasonable. Subjective good faith nevertheless remains available to a public employee as a second line of defense, which he may raise at trial even if he was not acting reasonably.

[217 *N.J.Super.* at 622, 526 *A.*2d 737.]

■ The claim of the DYFS defendants that their actions were objectively reasonable might at first seem inconsistent with the Supreme Court's criticisms in the termination litigation. *See* discussion *supra,* part I. However, those criticisms do not amount to charges of "crime, actual fraud, actual malice or willful miscon-

duct." *N.J.S.A.* 59:3–14. They are at most assertions of negligence.

In *Fielder v. Stonack,* 141 *N.J.* 101, 123–25, 661 *A.*2d 231 (1995) the Court endorsed the view that ordinary negligence is an insufficient basis for holding liable a public employee involved in the execution of the law under *N.J.S.A.* 59:3–3. And in *Hayes, supra,* 217 *N.J.Super.* at 623, 526 *A.*2d 737, and *Brayshaw v. Gelber,* 232 *N.J.Super.* 99, 110, 556 *A.*2d 788 (App.Div.1989), we held that the "good faith" of a public employee under *N.J.S.A.* 59:3–3 was to be judged in relation to whether his act violated *N.J.S.A.* 59:3–14 in that it involved "crime, actual fraud, actual malice or willful misconduct."

In this case, plaintiffs allege actual malice and willful misconduct, but in support of those claims they rely entirely upon the criticisms of DYFS contained in *Matter of K.L.F., supra,* which, as we have noted, fall far short of even implying that level of wrongdoing.

In resisting the motion for summary judgment, plaintiffs emphasize that the defendants' motion was brought prior to the exchange of discovery. The implication, of course, is that defendants have access to critical facts which would supposedly support plaintiffs' case. *Judson v. Peoples Bank and Trust Co. of Westfield,* 17 *N.J.* 67, 76, 110 *A.*2d 24 (1954). However, that is hardly the situation here. In this case the facts were fully explored in the prior termination action; and apart from the use of the pejorative conclusions set forth in the complaint and repeated in plaintiff's briefs, there are no additional facts either suggested or to be discovered. Plaintiffs appear to recognize this when they assert:

> The instant litigation is an attempt to determine the exact identity and responsibility among the multitude of individuals who had something to do with the handling of this case with a view to apportionment of liability for what has already been determined by the other courts to be improper conduct by one or more of the Defendants–Respondents.

As we noted in *Brayshaw v. Gelber, supra:*

We must not lose sight of the fact that our Supreme Court has encouraged the utilization of the summary judgment proceeding in cases of this kind.

[232 *N.J.Super.* at 115, 556 *A.*2d 788.]

In that regard in *Delbridge v. Schaeffer,* 238 *N.J.Super.* 323, 569 *A.*2d 872 (Law Div.1989), *aff'd* in an unreported decision Docket No. A–2997–89, 297 *N.J.Super.* 1, 687 *A.*2d 748 (App.Div.1993), *certif. denied, sub nom A.D. v. Franco,* 135 *N.J.* 467, 640 *A.*2d 849, *cert. denied,* —— *U.S.* ——, 115 *S.Ct.* 108, 130 *L.Ed.*2d 56 (1994), a case similar to this, the court said:

Plaintiffs' claim of malice as to the public employees, based merely upon an allegation of subjective bad faith, is rejected for fear of significantly detracting from the vitality of the Act's immunities by requiring the trial of all tort suits brought against public employees.

[*Id.* at 352, 569 *A.*2d 872.]

Since that is precisely the circumstance which we face here, and since we agree with *Delbridge,* we conclude that summary judgment should have been granted below to DYFS and its employees with respect to the state causes of action based on the immunities contained in the Tort Claims Act.

The immunity claimed by the deputy attorneys general stands, if anything, on stronger ground since the only allegation against them is that they wrongly instituted and appealed the termination case. *N.J.S.A.* 59:3–8 provides:

A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment.

Again, the immunity does not extend to conduct amounting to a crime or constituting actual malice, actual fraud, or willful misconduct. *N.J.S.A.* 59:3–14. But, as with DYFS and its employees, there is nothing in this case to suggest any serious wrongdoing other than plaintiffs' conclusory assertions. For the reasons stated above, they are not a sufficient hook on which to hang a lawsuit against these public servants.

V

The applicable statute of limitations with respect to all claims of plaintiff B.F. is conceded to be *N.J.S.A.* 2A:14–2, which, of course,

requires filing within two years after accrual of the action. *Wilson v. Garcia,* 471 *U.S.* 261, 266–69, 105 *S.Ct.* 1938, 1942–43, 85 *L.Ed.*2d 254 (1985)(as to Federal Civil Rights Actions under 42 *U.S.C.A.* § 1983); *Montells v. Haynes,* 133 *N.J.* 282, 292–93, 627 *A.*2d 654 (1993) (as to the state law claims).

This action was filed on June 30, 1994. Plaintiff B.F. asserts the cause of action did not arise until June 30, 1992, the date the Supreme Court issued its opinion in the termination case. The defendants contend the action accrued no later than October 21, 1991, the day DYFS applied to the Supreme Court for certification. We need not for purposes of this opinion fix the precise date on which the alleged causes of action accrued other than to note that plaintiff was well aware of them long before June 30, 1992. Her reliance upon the appellate process as extending the statute is a concept rejected by the Court in *Grunwald v. Bronkesh,* 131 *N.J.* 483, 621 *A.*2d 459 (1993):

> Delaying the accrual of a cause of action until the appellate process on the underlying claim has been completed undermines the principal consideration behind the statutes of limitations: fairness to the defendant.
>
> [*Id.* at 496–97, 621 *A.*2d 459 (citation omitted).]

This plaintiff also asserts her claims are derivative of those made on behalf of her daughter and therefore the statute of limitations is tolled, pursuant to *N.J.S.A.* 2A:14–2.1 because of her daughter's minority. However, the claims are not derivative as a matter of law since they involve allegations of direct injury to this plaintiff's own independent rights. *Procanik by Procanik v. Cillo,* 97 *N.J.* 339, 355–56, 478 *A.*2d 755 (1984).

## VI

Defendants' motion for summary judgment also relied upon the doctrine of collateral estoppel. This argument was based upon two points of reference: the termination proceedings themselves and plaintiffs' subsequent application in the trial court for fee sanctions under the Frivolous Pleading Statute, *N.J.S.A.*

2A:15–59.1. *Matter of K.L.F.*, 275 *N.J.Super.* 507, 646 *A.*2d 532 (Ch.Div.1993).

First, defendants note the trial court found as a fact in the termination case that the initial placement of K.L.F. was pursuant to a voluntary agreement and "was certainly appropriate at the time." The Supreme Court confirmed that finding of fact. *Matter of Guardianship of K.L.F., supra*, 129 *N.J.* at 35, 38, 608 *A.*2d 1327.

Second, defendants rely upon these findings of the trial court on plaintiffs' application for sanctions under the Frivolous Pleading Statute, *N.J.S.A.* 2A:15–59.1:

> In fact, through the presentation of its case, DYFS was able to demonstrate what this court perceived to be the agency's genuine interest in the psychological welfare of K.L.F. and its fear of the potentially adverse consequences of removing her from her second set of foster parents.
>
> [*Matter of K.L.F., supra*, 275 *N.J.Super.* at 527, 646 *A.*2d 532.]

The court rejected the application because plaintiffs had failed to meet the statutory requisites. In other words, they neither proved that the actions of DYFS were based on malevolent intent (*N.J.S.A.* 2A:15–59.1.b.(1)) nor that DYFS knew or should have known that its actions had no reasonable basis in law, equity, or fact (*N.J.S.A.* 2A:15–59.1.b.(2)). *Id.* at 524–529, 646 *A.*2d 532.

The doctrine of collateral estoppel "bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." *State v. Gonzalez*, 75 *N.J.* 181, 188, 380 *A.*2d 1128 (1977); *City of Plainfield v. Public Service Elec. and Gas Co.*, 82 *N.J.* 245, 257–58, 412 *A.*2d 759 (1980).

In *Busch v. Biggs*, 264 *N.J.Super.* 385, 624 *A.*2d 1017 (App.Div. 1993), the court held the following factors determine whether collateral estoppel applied:

> (1) the issue decided in the prior adjudication was identical with the one presented in the subsequent action;
>
> (2) the prior action was a judgment on the merits;
>
>> (i) the matter or fact was directly at issue and necessary to support the judgment rendered in the prior action;

(ii) the matter or fact was actually litigated and determined;

(3) the party against whom it was asserted had been a party or in privity with a party to the earlier adjudication.

[*Id.* at 399, 624 *A.*2d 1017.]

And in *United Rental Equip. Co. v. Aetna Life & Cas. Ins. Co.,* 74 *N.J.* 92, 101, 376 *A.*2d 1183 (1977), the Court adopted this principle from *Restatement* (Second) *of Judgments,* § 88 (Tent. Draft No. 2 (April 15, 1975)):

A party precluded from relitigating an issue with an opposing party, [under the principle of *res judicata*], is also precluded from doing so with another person unless he lacked full and fair opportunity to litigate the issue in the first action or unless other circumstances justify affording him an opportunity to relitigate the issue. * * *

 Plaintiff B.F. claims she was denied a full and fair opportunity to litigate the issue of DYFS' good faith in the Frivolous Pleading case because she was represented by assigned, *pro bono* counsel. However, she cites no authority for the proposition that the doctrine of collateral estoppel is inapplicable in such circumstances. Nor does she indicate any manner in which her appointed counsel's representation fell short of that which might have been provided by privately retained counsel.

Recurring to the *Busch v. Biggs, supra,* factors to be considered in determining whether collateral estoppel should apply, we observe that the precise issue determined adversely to plaintiffs in the Frivolous Pleading case, whether DYFS acted in good faith or with malice or without a reasonable legal basis, is the central issue in this case. The trial court determined that issue on its merits and it was a matter or fact directly at issue and necessary to support the judgment rendered. Under *United Rental Equip. Co., supra,* the bar extends to protect the attorneys who represented DYFS in the trial court as well as the DYFS employees even though they were not parties to the action.

 Plaintiffs' brief correctly notes that the court's findings in the Frivolous Pleading case were expressly limited to the activities of DYFS in the trial of the termination case. The court made no ruling with respect to good faith, or a lack thereof, in the

prosecution of the appeals. *Matter of K.L.F., supra,* 275 *N.J.Super.* at 525–26, 646 *A.*2d 532. Thus, the doctrine of collateral estoppel is no bar to plaintiffs' claim that the appeals constituted bad faith conduct for which defendants should be answerable in tort. However, that claim is legally insupportable for reasons noted earlier in this opinion.

In relation to the doctrine of collateral estoppel, the claims of plaintiff K.L.F. must receive the same treatment as those of her mother. By the time of the Frivolous Pleading action plaintiff B.F. had full physical and legal custody of her daughter K.L.F. Consequently, to the same extent that the doctrine of collateral estoppel bars the claims of plaintiff B.F. so does it bar those of plaintiff K.L.F. *E.I.B. by I.J. v. J.R.B.,* 259 *N.J.Super.* 99, 611 *A.*2d 662 (App.Div.), *certif. denied,* 130 *N.J.* 602, 617 *A.*2d 1223 (1992).

Affirmed.