# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.   A-2291-23
                          A-2336-23

DEPARTMENT OF CHILDREN
AND FAMILIES, DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Petitioner-Respondent,

v.

B.B.,

      Respondent-Appellant.

_____

DEPARTMENT OF CHILDREN
AND FAMILIES, DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Petitioner-Respondent,

v.

M.B.,

      Respondent-Appellant.

_____

Submitted April 8, 2025 – Decided June 12, 2025

Before Judges Gilson and Bishop-Thompson.

On appeal from the Department of Children and Families, Division of Child Protection and Permanency, Docket Nos. AHU 19-0394 and AHU 19-0395.

Jennifer N. Sellitti, Public Defender, attorney for appellant B.B. in A-2291-23 (Phuong V. Dao, Designated Counsel, on the briefs).

Jennifer N. Sellitti, Public Defender, attorney for appellant M.B. in A-2336-23 (Deric Wu, Designated Counsel, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Nicholas Dolinsky, Deputy Attorney General, on the brief).

PER CURIAM

In December 2018, Z.D. (Zeke), a then three-year-old child, was discovered to have multiple injuries, including burns and bruises, on various portions of his body.[1]  A medical expert determined that the injuries, some of which were new and others of which were old, were the result of physical abuse inflicted over an extended period.  At the time that the injuries were discovered,

---

[1]  We use initials and fictitious names to protect the privacy interests of the parties and confidentiality of the record.  See R. 1:38-3(d)(12).

Zeke was living in a house with six adults. A family court found that all those adults had abused or neglected Zeke.

Two of those adults, M.B. (Mia) and B.B. (Betty), now appeal from a final agency decision by the Department of Children and Families, Division of Child Protection and Permanency (the Division), which determined that the findings of abuse and neglect against Mia and Betty were "substantiated" in accordance with N.J.A.C. 3A:10-7.3(c)(1). Because we discern nothing arbitrary, capricious, or unreasonable concerning the Division's determination, we affirm.

I.

N.S. (Nadia) is the biological mother of Zeke, who was born in December 2014. Nadia has another child, Za.D. (Zara), who was born in September 2013. In 2018, Nadia lived in a four-bedroom apartment with Zeke, Zara, and her boyfriend O.S. (Otis). Also residing in the apartment were four other adults and four other children: P.B. (Phillis); Phillis's sister Betty; Phillis's and Betty's mother Mia; Mia's sister P.G.; and Phillis's four children (J.B., A.J., T.B., and A.B.). So, in total, six adults and six children were residing in the apartment.

On December 5, 2018, the Division received a referral from a hospital regarding allegations of abuse and neglect concerning Zeke. Earlier that day, a teacher's aide at Zeke's school noticed a bruise on Zeke's cheek and took him to

A-2291-23

the school nurse. The nurse examined Zeke and discovered that his legs were red and that his feet, ankles, and lower legs had blisters on them. The nurse also noticed that Zeke's penis was red and swollen, and that he had bruising around his lower back and buttocks.

Zeke was then taken to a hospital for further medical care. At the hospital, attending pediatrician Dr. Aislinn Black treated Zeke and observed that he had sustained first- and second-degree burns, which appeared to be consistent with "submersion burns," on his lower extremities. Dr. Black also observed multiple other burns and bruises on Zeke, including a bruise in the shape of a hand on his torso and possible older cigarette burns on his right arm. Those "new and old injuries [were] consistent with child abuse."

Accordingly, on December 5, 2018, Zeke was removed from his mother's care. The other children were also eventually removed from the home.

Division investigator Klidy Valderrama was assigned to the matter and interviewed some of the adults and children involved. Nadia claimed that she was not home on the night of December 4, 2018. She also asserted that on the morning of December 5, 2018, she observed her children getting dressed for school but did not see any of Zeke's injuries. She also told Valderrama that Mia

4

had recently left the apartment due to ongoing physical altercations with Phillis and described Phillis as being the aggressor in those situations.

Valderrama also spoke with then four-year-old A.J. and three-year-old T.B. A.J. told Valderrama that Phillis poured a pot of hot water on Zeke in the bathtub. T.B. reported that she saw Phillis and Mia put Zeke in hot water because he misbehaved.

Forensic Interview Specialist Karen Zambrano conducted forensic video interviews of A.J., Zara, and Zeke. In his interview, A.J. reiterated his initial disclosure, stating that Phillis and Mia poured hot water on Zeke while he was in the bathtub because he sometimes "pees" on himself. A.J. stated that Zeke tried to get out of the bathtub, but that Phillis and Mia pushed him back down and instructed A.J. to get a belt. Zara, who was then five years old, stated that Zeke got into trouble when he urinated on himself, and that she had to give him a "butt-whooping," which Phillis taught her how to do. Zara also reported that everyone in the apartment engaged in the "whoopings." Zeke stated that Otis hit him with a belt on his back, butt, and fingers, and added that "everybody whoops [him]," including Nadia, Mia, and Phillis. Zeke also reported that P.B. put him in the bathtub and stated that he was "in the tub standing up and the water felt bad."

On December 7, 2018, Zeke underwent a medical evaluation by Dr. Monica Weiner, the Medical Director of Metro Regional Diagnostic and Treatment Center. As part of her examination, Weiner observed Zeke's forensic video interview, reviewed his records from the hospital, and photographs of his injuries. Weiner concluded that Zeke's burn pattern was consistent with the children's statement that hot water had been poured on Zeke. In addition, Weiner described Zeke's injuries as "too numerous to count" and opined that he had endured ongoing physical abuse. She added that Zeke was "the target of most of the physical abuse . . . [and] emotional abuse" within the household.

That same day, the Division filed a complaint in the Family Part under N.J.S.A. 9:6-8.21 (Title Nine) against all adults in the household. Thereafter, the Division interviewed all the adults, except Nadia.

During Mia's interview, she stated that she was not residing at the apartment when the burning episode occurred. Mia claimed she had moved out of the apartment in late October 2018 because she was being abused by Phillis. She also reported that she returned to the apartment on December 4, 2018, to visit her grandchildren, but that she left by 6:00 p.m. Mia acknowledged previously seeing Otis hit Zeke and Zara and added that Otis often hit the children with a belt. Although Mia admitted that she was present for some of

6

these occurrences, she did not intervene. Mia also stated that, on one occasion, she witnessed Otis strike Zeke with a belt so hard that Zeke bled.

During Betty's interview, she reported that she gave the children a bath on December 4, 2018, and took the children to school on the day of the referral. Betty claimed that she did not see any marks or bruises on the children because the children got themselves ready for school. Further, she stated that Zeke "did not appear to be walking different[ly] and did not complain of pain." Betty later recalled that Zeke had complained of a stomachache, but that he refused her offer to call a family member.

On May 8, 2019, the Division concluded its preliminary investigation and found the allegations of abuse and neglect were "substantiated" as to all adults living in the apartment. As to Mia, the allegations were "Substantiated for Risk of Harm; Physical Impairment - Cut, Bruise, Welt, Abrasion, Oral Injury with regard to [Zeke]." As to Betty, the allegations were "Substantiated for Risk of Harm with regard to [Zeke]."

Approximately two months later, on June 27, 2019, the Family Part found that all adults living in the apartment had abused or neglected Zeke and Zara. In making those findings, the Family Part specifically found that "[Mia] physically abused [Zeke]," and that "[Mia] . . . and [Betty] knew or should have

known that [the children] were being physically abused by others in the home and did nothing to prevent it." The court also found that "[a]ll the adults in the home failed to protect the children." Thereafter, Mia and Betty were dismissed from the Family Part Title Nine action after they "represented that they [would] not reside with or act as caretakers of the children."

Neither Mia nor Betty appealed the Family Part's findings that they abused or neglected Zeke. Instead, both women requested an Office of Administrative Law (OAL) hearing to challenge their respective "substantiated" findings pursuant to N.J.A.C. 3A:10-7.3(e). Those administrative appeals were consolidated on August 6, 2021.

An Administrative Law Judge (ALJ) then conducted two days of hearings in August 2023. On December 26, 2023, the ALJ issued his initial decision finding that the Division had proven "by a preponderance of credible evidence that the allegation[s] of abuse against [Mia] and [Betty] [were] 'substantiated.'" Concerning Mia, the ALJ found that she had observed Zeke being abused on numerous occasions but had failed to report the abuse. The ALJ also rejected Mia's claim that she had not reported the abuse because Nadia and Otis threatened her. Concerning Betty, the ALJ found she was aware of the substantial and ongoing physical abuse of Zeke and, like Mia, failed to report

the abuse.  Accordingly, the ALJ concluded "that a balancing of the aggravating and mitigating factors" supported the finding of substantiated.

On February 9, 2024, the Division issued a final decision, adopting the ALJ's initial findings and affirming the substantiated determinations against Mia and Betty.  Mia and Betty now appeal from the Division's final agency decision in this consolidated appeal.

II.

On appeal, Mia and Betty make two arguments.  First, they contend that the Division erroneously applied a strict liability standard when ruling on the allegations against them.  Next, they assert that, considering the aggravating and mitigating factors, the evidence is insufficient to "substantiate" the findings of abuse and neglect against them.  Having reviewed the record and law, we reject both arguments.

The scope of judicial review of an administrative decision is limited.  In re Herrmann, 192 N.J. 19, 27 (2007) (citing In re Carter, 191 N.J. 474, 482 (2007)).  An agency's decision will not be reversed unless "(1) it was arbitrary, capricious, or unreasonable; (2) it violated express or implied legislative policies; (3) it offended the State or Federal Constitution; or (4) the findings on which it was based were not supported by substantial, credible evidence in the

9

record." Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Env't Prot., 191 N.J. 38, 48 (2007) (citing In re Taylor, 158 N.J. 644, 656 (1999)).

"[A] reviewing court . . . will not weigh the evidence, determine the credibility of witnesses, draw inferences and conclusions from the evidence, or resolve conflicts therein." De Vitis v. N.J. Racing Comm'n, 202 N.J. Super. 484, 489-90 (App. Div. 1985) (citing In re Grossman, 127 N.J. Super. 13, 23 (App. Div. 1974), certif. denied, 65 N.J. 292 (1974)). Instead, "if substantial credible evidence supports an agency's conclusion, a court may not substitute its own judgment for the agency's" judgment. Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992) (citing Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988)). Moreover, "in challenging an agency's determination, an appellant carries a substantial burden of persuasion, and the agency's determination carries a presumption of reasonableness." Dep't of Child. & Fams. v. C.H., 414 N.J. Super. 472, 479-80 (App. Div. 2010), adhered to on reconsideration, 416 N.J. Super. 414 (App. Div. 2010), certif. denied, 207 N.J. 188 (2011).

A.    The Findings of Abuse and Neglect.

Under N.J.S.A. 9:6-8.21(c)(4), a child is considered "abused or neglected" when:

> [Their] physical, mental, or emotional condition has
> been impaired or is in imminent danger of becoming

impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court . . . .

Once the Division finds that abuse or neglect has occurred, it must determine whether the finding is "substantiated" or "established."  N.J.A.C. 3A:10-7.3(e).  N.J.A.C. 3A:10-7.3(c) states that:

1.    An allegation shall be "substantiated" if the preponderance of the evidence indicates that a child is an "abused or neglected child" as defined in N.J.S.A. 9:6-8.21 and either the investigation indicates the existence of any of the circumstances in N.J.A.C. 3A:10-7.4 or substantiation is warranted based on consideration of the aggravating and mitigating factors listed in N.J.A.C. 3A:10-7.5.

2.    An allegation shall be "established" if the preponderance of the evidence indicates that a child is an "abused or neglected child" as defined in N.J.S.A. 9:6-8.21, but the act or acts committed or omitted do not warrant a finding of "substantiated" as defined in (c)1 above.

In attempting to dispute the Division's findings that the abuse was "substantiated" rather than "established" under N.J.A.C. 3A:10-7.3(c), Mia and Betty effectively dispute the Family Part's findings that they abused or neglected

11

Zeke in violation of N.J.S.A. 9:6-8.21(c).[2] Specifically, they contend that there was insufficient evidence to establish that they knew or should have known of the ongoing abuse. We hold that they are precluded from making that challenge under the principles of res judicata and collateral estoppel.

Under the principles of res judicata, "a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding." Velasquez v. Franz, 123 N.J. 498, 505 (1991) (citing Roberts v. Goldner, 79 N.J. 82, 85 (1979)). There are three basic elements for res judicata to apply:

> (1) [T]he judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.
>
> [Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 412 (1991).]

---

[2] For present purposes, we note the fundamental distinction between investigatory and adjudicatory administrative findings. See In re R.P., 333 N.J. Super. 105, 116-17 (App. Div. 2000) (explaining that "in an adjudicatory proceeding, the party against whom the action has been brought is afforded an opportunity to cross-examine the investigator and other witnesses and to present evidence to rebut the charge"). Here, Mia and Betty appeal from the Division's adjudicatory administrative findings that the abuse was "substantiated."

Collateral estoppel, also known as issue preclusion, "is a branch of the broader law of res judicata." Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 173 (App. Div. 2000) (quoting Figueroa v. Hartford Ins. Co., 241 N.J. Super. 578, 584 (App. Div. 1990)) (internal quotation marks omitted). "Collateral estoppel bars a party from relitigating any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action, where the burden of proof is the same." Div. of Youth & Fam. Servs. v. R.D., 412 N.J. Super. 389, 400 (App. Div. 2010) (first citing In re Coruzzi, 95 N.J. 557, 567 (1984); and then citing B.F. v. Div. of Youth & Fam. Servs., 296 N.J. Super. 372, 389 (App. Div. 1997)). "Although collateral estoppel is not mandated by constitution or statute, it serves important policy goals such as 'finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness.'" Ibid. (citation reformatted) (quoting First Union Nat'l Bank v. Penn Salem Marina, Inc., 190 N.J. 342, 352 (2007)).

For collateral estoppel to apply, it must be demonstrated that:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the

13

merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

[Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006) (quoting In re Est. of Dawson, 136 N.J. 1, 20-21 (1994)).]

Notably, "[a]lthough collateral estoppel overlaps with and is closely related to res judicata, the distinguishing feature of collateral estoppel is that it alone bars relitigation of issues in suits that arise from different causes of action." Selective Ins. Co., 327 N.J. Super. at 173 (citing United Rental Equip. Co. v. Aetna Life & Cas. Ins. Co., 74 N.J. 92, 101 (1977)).

The issue of whether Mia and Betty abused or neglected Zeke was litigated in the Title Nine proceeding before the Family Part. In that proceeding, the Family Part found that Mia physically abused Zeke and that Mia and Betty both knew or should have known that Zeke was being physically abused by other adults in the home and did nothing to prevent it. The court also found that it was inconceivable that the adults living in the home were unaware of the abuse. Accordingly, the Family Part concluded that the Division had established, by the preponderance of the evidence, that Zeke was abused and neglected by Mia and Betty in violation of N.J.S.A. 9:6-8.21(c)(4).

14

Because Mia and Betty were both parties to the Title Nine action, and as neither one of them appealed the Family Part's findings, they are estopped from contesting the findings of abuse or neglect. Notably, the same standard of proof, that is, the preponderance of the evidence, applied in the administrative action. Compare N.J. Dep't of Child. & Fams. v. A.L., 213 N.J. 1, 23 (2013) (explaining that "the Division must show imminent danger or a substantial risk of harm to a child by a preponderance of the evidence" (citing N.J.S.A. 9:6-8.21(c)(4)(b))) with N.J.A.C. 3A:10-7.3(c) (applying a "preponderance of the evidence" standard).

Moreover, even if we were to review the findings made by the ALJ and adopted by the Division, we would affirm them because they are supported by substantial credible evidence. Thus, we reject Mia's and Betty's challenges to the finding that they abused or neglected Zeke.

B. The "Absolute" Circumstances and Aggravating and Mitigating Factors.

The Division's regulations state that it "shall substantiate abuse or neglect if one or more of the circumstances in N.J.A.C. 3A:10-7.4 exists. Absent any of the circumstances in N.J.A.C. 3A:10-7.4, the Department representative shall determine if the abuse or neglect is substantiated or established based on the factors listed in N.J.A.C. 3A:10-7.5." N.J.A.C. 3A:10-7.3(e).

In accordance with N.J.A.C. 3A:10-7.4(a), the finding shall be "substantiated" when any one of the following circumstances exist:

1. The death or near death of a child as a result of abuse or neglect;

2. Subjecting a child to sexual activity or exposure to inappropriate sexual activity or materials;

3. The infliction of injury or creation of a condition requiring a child to be hospitalized or to receive significant medical attention;

4. Repeated instances of physical abuse committed by the perpetrator against any child;

5. Failure to take reasonable action to protect a child from sexual abuse or repeated instances of physical abuse under circumstances where the parent or guardian knew or should have known that such abuse was occurring; or

6. Depriving a child of necessary care, which either caused serious harm or created a substantial risk of serious harm.

If one of those circumstances does not exist, the Division shall determine if the abuse or neglect is substantiated or established based on the aggravating and mitigating factors listed in N.J.A.C. 3A:10-7.5. The aggravating factors include:

1. Institutional abuse or neglect;

2. The perpetrator's failure to comply with court orders or clearly established or agreed-upon conditions designed to ensure the child's safety, such as a child safety plan or case plan;

3. The tender age, delayed developmental status, or other vulnerability of the child;

4. Any significant or lasting physical, psychological, or emotional impact on the child;

5. An attempt to inflict any significant or lasting physical, psychological, or emotional harm on the child;

6. Evidence suggesting a repetition or pattern of abuse or neglect, including multiple instances in which abuse or neglect was substantiated or established; and

7. The child's safety requires separation of the child from the perpetrator.

[N.J.A.C. 3A:10-7.5(a).]

The mitigating factors include:

1. Remedial actions taken by the alleged perpetrator before the investigation was concluded;

2. Extraordinary, situational, or temporary stressors that caused the parent or guardian to act in an uncharacteristic abusive or neglectful manner;

3. The isolated or aberrational nature of the abuse or neglect; and

17

> 4. The limited, minor, or negligible physical, psychological, or emotional impact of the abuse or neglect on the child.
>
> [N.J.A.C. 3A:10-7.5(b).]

On appeal, Mia and Betty argue that the Division erroneously applied a strict liability standard when ruling on the allegations against them. In support of that argument, they point to Valderrama's testimony at the August 15, 2023 hearing before the OAL. At that hearing, Valderrama stated:

> [W]e found an absolute circumstance -- an absolute to substantiate the [abuse or neglect]. And the absolute was that [Zeke]'s injuries require[d] him to be hospitalized, and the fact that, you know, they -- they knew or should have known that this child was being physically abused at the house and failed to report this matter to the authorities.

Mia's and Betty's first argument fails as a matter of law. As the New Jersey Supreme Court has explained "if the statutory terms, given their plain and ordinary meaning, 'are clear and unambiguous, then the interpretive process ends, and we apply the law as written.'" State v. Lane, 251 N.J. 84, 94 (2022) (quoting State v. J.V., 242 N.J. 432, 443 (2020)) (internal quotation marks omitted). Here, the plain language of N.J.A.C. 3A:10-7.3(c)(1) and (e) clearly identifies that the Division can find a "substantiated" case of abuse by means of two distinct and independently sufficient methods: (1) by finding one of the six

"absolute" circumstances under N.J.A.C. 3A:10-7.4; or (2) by considering the aggravating and mitigating factors under N.J.A.C. 3A:10-7.5.

Although the ALJ did not rely on any of the circumstances enumerated in N.J.A.C. 3A:10-7.4, the record establishes that Mia's and Betty's abuse or neglect were substantiated under N.J.A.C. 3A:10-7.4.[3] There was undisputed testimony that Zeke was treated at a hospital for his injuries. So, the Division proved one of the circumstances under N.J.A.C. 3A:10-7.4: "[t]he infliction of injury or creation of a condition requiring a child to be hospitalized or to receive significant medical attention." N.J.A.C. 3A:10-7.4(a)(3). The record also establishes that Zeke was subjected to repeated physical abuse, Mia and Betty knew of the abuse, and that they both failed to take any action to report the abuse. See N.J.A.C. 3A:10-7.4(a)(5). Valderrama's use of the word "absolute" did not impose a strict liability standard; rather it was a reference to the factors in N.J.A.C. 3A10-7.4.

Moreover, the record demonstrates that the ALJ correctly found that a balancing of the aggravating and mitigating factors supports the substantiation

---

[3] In his initial decision, the ALJ explained that the Division had not alleged that any of the circumstances enumerated in N.J.A.C. 3A:10-7.4 were present. A review of the record, however, reveals that the Division had repeatedly argued for the presence of two of the circumstances. See N.J.A.C. 3A:10-7.4(1), (5).

19

of abuse or neglect by Mia and Betty. While not explicitly identified in his twenty-four-page initial decision, the ALJ's findings of facts and conclusions of law reflect the presence of several aggravating factors. See State v. Maisonet, 245 N.J. 552, 569 (2021) ("The above approach -- assessing the relevant factors on appeal in light of the record . . . sensibly protects both the constitutional rights of defendants and 'the public's interest in the orderly administration of justice'" (quoting State v. Furguson, 198 N.J. Super. 395, 402 (App. Div. 1985))).

Those aggravating factors include (1) that Zeke was of a tender age; (2) that there was a pattern of abuse or neglect in the household, of which both Mia and Betty were aware; and (3) that Zeke's safety required his separation from the perpetrators. N.J.A.C. 3A:10-7.5(a)(3), (6), (7). The presence of the factors was supported by the credible record evidence and Weiner's unrefuted expert testimony that Zeke was the victim of ongoing physical and emotional abuse, and "that a reasonable care giver would have observed [his] injuries."

Mia and Betty argue that the Division should have found mitigating factor one, "[r]emedial actions taken by the alleged perpetrator before the investigation was concluded," and two, "[e]xtraordinary, situational, or temporary stressors that caused the parent or guardian to act in an uncharacteristic[lly] abusive or neglectful manner." N.J.A.C. 3A:10-7.5(b)(1), (2). Betty asserts that on the day

the burn injuries were discovered, she "tried to take remedial actions by calling one of [Zeke]'s family members and waking up [Zeke]'s mother to pick him up from school." Concerning mitigating factor two, Mia and Betty assert that they were physically assaulted or threatened by other family members in the home, causing them to act in an uncharacteristically abusive or neglectful manner.

The ALJ's initial decision, however, reflects that he considered these claims but found no support for them. In contrast, the ALJ found that the extensive evidence demonstrated that Mia and Betty had knowledge that Zeke was being physically abused on a recurring basis. The ALJ also rejected Mia's and Betty's claims that they did not report the abuse because of threats of violence as "unsubstantiated" and "unpersuasive." The Division ultimately adopted these findings in its final decision.

Therefore, the record reflects the Division had the basis to determine that a balance of the aggravating and mitigating factors under N.J.A.C. 3A:10-7.5 warranted a "substantiated" tier finding regarding Mia's and Betty's abuse or neglect of Zeke. Further, the Division's conclusion that the aggravating factors outweighed the mitigating factors was not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

21