UNITED RENTAL EQUIPMENT CO., INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT, v. AETNA LIFE AND CASUALTY INS., CO., AN INSURANCE CORPORATION AUTHORIZED TO TRANSACT BUSINESS IN NEW JERSEY, DEFENDANT-RESPONDENT, AND FULCRUM CORPORATION, A NEW JERSEY CORPORATION, DEFENDANT.

UNITED RENTAL EQUIPMENT CO., INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT, v. ST. PAUL FIRE AND MARINE INS., CO., AN INSURANCE CORPORATION AUTHORIZED TO TRANSACT BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued March 22, 1976—Decided July 20, 1977.

94

*Mr. William S. Singer* argued the cause for appellant (*Mr. Sanford E. Chernin,* attorney).

*Mr. Edward R. Schwartz* argued the cause for respondent Aetna Life and Casualty Insurance Company (*Messrs. Schwartz and Andolino,* attorneys; *Mr. Frank R. Cinquina,* on the brief).

*Mr. Stanley P. Fishman* argued the cause for respondent St. Paul Fire and Marine Insurance Company.

PER CURIAM. These cases resulted in the same judge rendering summary judgments for defendants. The judgment in favor of defendant Aetna Life and Casualty Insurance Company (Aetna) was affirmed in an unreported opinion by the Appellate Division and we granted certification, 68 *N. J.* 169 (1975). We certified on our own motion the case in which St. Paul Fire and Marine Insurance Company is the defendant while the matter was pending unheard in the Appellate Division, 69 *N. J.* 399 (1976). The cases are virtual twins, the essential issue being whether under the circumstance summary judgments were properly entered on the basis of substantially identical exclusionary clauses in the respective policies of insurance issued by defendants. We affirm in both cases.

# I

In May 1968 plaintiff United Rental Equipment Co., Inc. (United Rental) leased an industrial crane to defendant Fulcrum Company (Fulcrum). In order to protect its interest United Rental had secured a policy of insurance from respondent Aetna which generally covered any damage or loss to its machines. Fulcrum also secured a policy on the machine from respondent St. Paul, but that policy provided that United Rental was the designated payee for any losses covered by the policy. Although there were minor differences in the language of the two policies, both excluded from coverage under the contract those losses occasioned by the lifting of any load which exceeded the registered lifting or supporting capacity of any machine otherwise within the scope of coverage.[1]

Neither policy specifically defines the term "registered capacity." However, we assume, consistent with the trial judge's finding and in the absence of any proof or substantial argument to the contrary, that the phrase refers to the manufacturer's suggested capability as indicated on a chart posted in the cab of the crane to guide the operator.

Fulcrum used the rented crane to pour cement on the dome of a storage tank which it was building on Staten Island. On June 5, 1968, while being utilized in this manner, the crane's boom suddenly buckled and collapsed. In

---

[1]The language of the Aetna policy is as follows:

*This policy does not insure:*

\*    \*    \*    \*    \*    \*    \*    \*

  (c)  Against loss or damage occasioned by the weight of a load exceeding the registered lifting or supporting capacity of any machine;

\*    \*    \*    \*    \*    \*    \*    \*

The St. Paul policy reads:

*This policy does not insure against:*

\*    \*    \*    \*    \*    \*    \*    \*

  (11.)  loss or damage occasioned by the weight of a load exceeding the registered capacity of any machine.

addition to the damage to the tank and serious injury to several workmen at the site, there was irreparable damage to the crane's boom and jib assembly.

Following the accident United Rental sought recovery from Aetna for the damage to the crane. Aetna resisted the claim, contending that the accident resulted from an overloading of the crane's capacity, thus falling within the coverage exclusion described above. United Rental's suit followed, with Aetna accompanying its answer with an affidavit of its engineering expert, one George W. Mackay. This affidavit contained Mackay's opinion of the reasons for the crane's failure and was based on a number of factors including personal observations and inspections of the accident site and the depositions of a number of parties in various personal injury actions, commenced in New York, resulting from the same accident.[2]

One deposition relied on by Mackay was that of Fred Speranza, operator of the crane at the time of its collapse, who was fully aware of the machine's capabilities and limitations. After describing some of the preliminary operations of the crane by which he undertook to deliver concrete to the tank's dome, Speranza gave this account of the accident:

Well, after I swung the machine around, the boom was in position. I was waiting for the signal to boom down. All of a sudden the boom went on me, collapsed. It's as simple as that. That's all I can tell you.

Several days after the accident Speranza learned that at the time of the occurrence and contrary to normal practice, the crane's bucket was filled to capacity. He further testified that he was present when the bucket was weighed

---

[2]These actions were commenced on behalf of men who had been "washed off" the tank when the crane collapsed. Since all of these actions were settled, no judicial determination was made regarding the cause of the accident.

after it was recovered from the dome and he recalled the bucket's weight to be approximately 7800 pounds.

In addition to the Speranza deposition Mackay resorted to several other elements to formulate the opinion contained in his affidavit. He also utilized the previous testimony of Joseph Medler, a deputy chief engineer with the New York Department of Port and Terminals, who had been assigned by his department to investigate the damage done to the tank. In the course of this investigation he participated in the weigh-in of the bucket after it had been recovered. He testified that the bucket's weight was in the neighborhood of 7600 pounds. Mackay also had an affidavit of Edward P. O'Neill, a New York City detective, who investigated the accident on behalf of the New York City District Attorney's office. This document included measurements which were of assistance in making critical calculations. Finally, Mackay had the benefit of the chart setting forth the maximum lifting capacities of the crane, indicating a maximum capacity of 3400 pounds for the equipment rigged as it was when the accident occurred.

On the basis of these materials MacKay gave this as his opinion:

Assuming all of the aforesaid facts [as revealed by his inspection, the depositions, the affidavit and the capacity chart] to be true, it must be concluded that at the time of the accident, the crane was overloaded by more than 100 per cent and it is my opinion that the overload of the crane caused it to collapse and result in damage to the crane alleged by plaintiff United Rental Equipment Company, Inc.

In addition to the Mackay affidavit the trial court in the Aetna case was also referred to the answers made by plaintiff to certain interrogatories propounded by defendant Aetna. Two are relevant to this case:

4. Describe in detail the cause and origin of the loss referred to in the Complaint, setting forth the date and time as well as the place where the accident occurred.

ANSWER: At the time of the operation and accident to the crane, the operator was apparently over-reaching causing the machine to buckle and strike the top of the building upon which they were working. As a result of the impact, the damages were caused to the machine. The accident occurred on June 5th, 1968 at about 2:45 P.M. at or near Bloomfield Road and Merrill Avenue, Staten Island, New York.

6. Describe in detail what the crane was lifting at the time of the accident and the weight thereof, indicating the position of the boom at the time of the occurrence.

ANSWER: At the time of the accident the plaintiff has been advised that the crane was lifting a concrete bucket, the exact weight of which is not known. However, from the information received, it was determined that the amount of the load in the bucket in conjunction with the angle of the boom at the time, exceeded the chart limits.

Aetna argued in the trial court that the affidavit of Mackay and these answers to interrogatories indisputably established that the cause of the crane's collapse was an overloading and therefore the loss sustained by United Rental was outside of the scope of coverage. United Rental presented no documents to support any other theory as to the cause of the accident.

One week after the trial court granted Aetna's motion for summary judgment the plaintiff instituted an action against St. Paul to recover damages to the crane. St. Paul answered and, having disclaimed coverage on the basis of an exclusionary clause virtually identical to that contained in the Aetna policy, moved for summary judgment. Prior to the hearing on this motion, the Appellate Division affirmed the earlier disposition in the Aetna case.

At the hearing St. Paul argued that inasmuch as the issues in its case and the Aetna case were identical and it was relying on precisely the same factual basis, namely, the Mackay affidavit, summary judgment was equally appropriate in the St. Paul case. United Rental argued in turn that summary judgment was not proper because discovery had not yet been completed and it requested leave to take Mackay's deposition.

The trial judge (who, as we have pointed out, was the same judge who also had determined the Aetna matter) after hearing argument concluded that nothing had been presented to him to distinguish the St. Paul case from the Aetna case. He therefore ordered summary judgment entered in favor of St. Paul and denied plaintiff's application for depositions. After ordering direct certification we set this matter down for argument with the Aetna case.

## II

■ Mindful of the desirability of affording every litigant who has a bona fide cause of action or defense the opportunity for full exposure of his case, *Robbins v. Jersey City,* 23 *N. J.* 229, 240–41 (1957), we examine the propriety of the grant of summary judgment in the Aetna action. In doing so we likewise keep in focus an equally important countervailing consideration, namely, that

> protection is to be afforded against groundless claims and frivolous defenses, not only to save the antagonists the expense of protracted litigation but also to reserve judicial manpower and facilities to cases which meritoriously command attention.
> [*Id.* at 241.]

*See also Monmouth Lumber Co. v. Indemnity Ins. Co. of N. Amer.,* 21 *N. J.* 439, 448 (1956); *Blum v. Prudential Ins. Co. of Amer.,* 125 *N. J. Super.* 195, 197 (Law Div. 1973).

■ When an insurance carrier puts in issue its coverage of a loss under a contract of insurance by relying on an exclusionary clause, it bears a substantial burden of demonstrating that the loss falls outside the scope of coverage. The supporting policy reasons were stated in *Ruvolo v. American Cas. Co.,* 39 *N. J.* 490, 498 (1963):

> It has been said many times that exclusionary clauses, drawn for the company by men learned in the law of insurance are to be strictly construed against the insurer; that the insured is entitled

to protection to the full extent that any reasonable interpretation of them will permit.

*See also Mazzilli v. Accident & Cas. Ins. Co. of Winterthur,* 35 *N. J.* 1, 7 (1961); *Bowler v. Fidelity & Cas. Co. of New York,* 53 *N. J.* 313 (1969).

██ ██ We conclude that even under this demanding standard, Aetna succeeded in clearly showing that the loss fell within the terms of the exclusionary clause and therefore was outside the scope of coverage on at least two grounds. First, the Mackay affidavit led unmistakably to the conclusion that the crane was overloaded at the time of the accident; United Rental's failure to provide the court with *any* counter theory left no genuine issue of material fact, thus making the granting of summary judgment appropriate. Second, the plaintiff's own answers to interrogatories contain an admission that the accident was caused by an overloaded condition. Significantly, this answer was never amended and remains as an admission of the ultimate fact by the plaintiff. Either the unrebutted affidavit or the admission contained in the answers to interrogatories would have been sufficient standing alone to support the granting of the motion by the trial court. Accordingly, when that court was presented with both of those factors, the propriety of granting the motion was even more clearly evident.

Nor is this conclusion undercut by the admonition in *Ruvolo, supra,* that a court should be particularly slow in granting summary judgment where a case may rest on opinion or expert testimony. 39 *N. J.* at 500. Here the trial judge had not simply a bald assertion of an expert that the crane was overloaded; rather he had the benefit of the detailed materials on which Mackay relied, together with a painstaking analysis of how the expert had arrived at his conclusion. In the circumstances the right to summary judgment appeared "so clearly as to leave no room for controversy." *Ruvolo, supra,* 39 *N. J.* at 501.

### III

We direct attention now to the summary judgment entered in favor of defendant St. Paul. At the argument of this defendant's motion the trial judge pointed out that nothing had changed since the hearing of the Aetna motion except that the Appellate Division had affirmed his earlier ruling. Therefore, on the basis of his earlier findings and decision in the Aetna case, the judge granted St. Paul's motion for summary judgment.

Although not put in precisely these terms, the trial judge's ruling was correct because the doctrine of collateral estoppel barred United Rental from relitigating with St. Paul precisely the same issue on precisely the same facts as had been implicated in the Aetna case. That proposition has been succinctly stated as follows:

A party precluded from relitigating an issue with an opposing party, [under the principle of *res judicata*], is also precluded from doing so with another person unless he lacked full and fair opportunity to litigate the issue in the first action or unless other circumstances justify affording him an opportunity to relitigate the issue. * * *

> [*Restatement* (Second) *of Judgments*, § 88 (Tent. Draft No. 2 (April 15, 1975)).]

This principle is squarely applicable to the situation before us.

However, United Rental contends that in no event should the trial court have entertained St. Paul's summary judgment motion without first having afforded plaintiff the opportunity to take Mackay's deposition. The notion apparently is that the deposition would reveal some inherent weakness in Mackay's affidavit springing from its hearsay character.

But an attack directed at an expert's reliance on hearsay as part of the basis for his opinion collides with well-established law to the contrary. Our rules of evidence provide:

> If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (a) based primarily on facts, data or other expert opinion established by evidence at trial and (b) within the scope of the special knowledge, skill, experience or training possessed by the witness.
>
> [*Evid. R.* 56(2).]

We construe this rule in light of its history. The commission established to review the proposed rules of evidence made this comment:

> Before expert opinion may be admitted, the trial judge, must, under Rule 56(2)(a) find that the opinion is based "primarily on facts, data, or other expert opinion established by evidence at trial." By the use of the word "primarily," it is clear that an expert's opinion need not rest entirely on matters established by the evidence. In addition to basing his opinion on the expert opinions of others * * * an expert may base his opinion partly on hearsay.
>
> [*State R. of Court Rev. Comm'n, of N. J. Legislature, New Jersey Rules of Evidence*, 229–30 (1972).]

*Cf. State v. Alexander,* 7 *N. J.* 585 (1951), *cert.* den., 343 *U. S.* 908, 72 *S. Ct.* 638, 96 *L. Ed.* 1326 (1952).

While we again acknowledge that where an expert's opinion is offered in support of summary judgment, it should be scrutinized closely to evaluate its underlying basis, we are satisfied that Mackay's affidavit was properly considered and accorded probative weight. Furthermore, the opportunity to attack that opinion through the use of depositions or otherwise was clearly available to United Rental in the Aetna litigation; hence, collateral estoppel will bar the attack now where no reason has been offered as to why United Rental did not attempt to impugn, by deposition or otherwise, Mackay's affidavit during the Aetna case. This is especially so since what the expert's opinion dealt with was the ultimate fact at issue. *Compare State v. Esposito,* 148 *N. J. Super.* 102, 106 (App. Div. 1977).

## IV

The judgments under appeal are hereby:
Affirmed.

*For affirmance*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For reversal*—None.