**KLOSTER COMPANY, INC., Appellant,**

v.

**MICHIGAN MUTUAL INSURANCE COMPANY, Appellee.**

No. 88–2653.

United States Court of Appeals,
Eighth Circuit.

Submitted June 16, 1989.

Decided Aug. 16, 1989.

Louis J. Basso, St. Louis, Mo., for appellant.

John A. Michener, St. Louis, Mo., for appellee.

Before MAGILL, Circuit Judge, ROSS, Senior Circuit Judge, and CAMBRIDGE *, District Judge.

ROSS, Senior Circuit Judge.

Kloster Company, Inc. (Kloster), a Missouri corporation, appeals from the district court's [1] order entering judgment upon an adverse jury verdict in its diversity action against Michigan Mutual Insurance Co. Kloster brought the action to recover proceeds under an insurance policy when its

---

* The HONORABLE WILLIAM G. CAMBRIDGE, United States District Court Judge for the District of Nebraska, sitting by designation.

1. The Honorable Carol E. Jackson, United States Magistrate for the Eastern District of Mis-

souri, to whom the matter was referred by consent of the parties pursuant to 28 U.S.C. § 636(c).

crane overturned. We find the entire appeal without merit and affirm.

Kloster, a construction contractor, owned a model RT65S crane insured by Michigan Mutual. On May 27, 1985, the crane overturned and was damaged while being operated to carry an 800–pound steel cage column. Kloster immediately reported to Michigan Mutual that a crane had tipped over while carrying a load. Michigan Mutual conducted an investigation through its claims examiner, Olivia Schimel, in its local St. Louis office. She determined that there was coverage under the policy. On June 28, 1985, an independent adjuster appointed by Michigan Mutual photographed the accident site, determined the cost of repair, and recommended a certain repair facility. Kloster had the crane repaired but the facts are in dispute as to whether Michigan Mutual was aware that the crane was being repaired.

Meanwhile, Schimel had been trying to reach the crane operator, Dennis Stephens, through the company's vice president, George Kloster (Mr. Kloster). On August 19, 1985, Mr. Kloster told her that there had been no load on the crane, that the ground beneath it was muddy, and that it had a thirty-five ton capacity. Relying on these representations, Schimel reported her findings to her superiors who recommended to the home office in Detroit that the claim be paid. On October 10, 1985, the local office requested authority from the home office to submit a proof of loss to Kloster. Michigan Mutual sent the proof of loss to Kloster in the amount of $75,114.31 on December 3, 1985.

Before the proof of loss was returned, Schimel contacted operator Stephens who told her that he did have a load on the crane when it tipped over but that the load did not exceed the lifting capacity. Michigan Mutual personnel then had reservations about the claim and investigated further. They talked again to Mr. Kloster who stated that the crane's load capacity was 5,590 pounds. They copied a load chart from inside the cab of the machine.[2]

On January 16, 1986, Michigan Mutual received the completed proof of loss from Kloster whereupon Schimel told Kloster that they were continuing their investigation. In response, Kloster wrote Michigan Mutual, verifying that the load was 750 pounds. Stephens gave a statement that he had sixty feet of boom extended at an angle of forty-five degrees at the time of the tip-over. On April 9, 1986, however, Michigan Mutual received a letter from Mr. Kloster stating that he had spent considerable time reconstructing the events and had concluded that the crane had *"no load"* and that the overturn was due to "ground failure." Both statements were untrue.

Due to conflicting stories at this point, Michigan Mutual hired an independent engineer to review the matter, who reported that the crane was overloaded. On July 29, 1986, Michigan Mutual denied the claim based on the policy's following exclusionary clause:

3. THIS POLICY DOES NOT INSURE AGAINST:

(a) Loss or damage occasioned by the weight of a load exceeding the registered lifting or supporting capacity of any machine.

Kloster sued Michigan Mutual for repair costs (stipulated at $80,740.56) and vexatious refusal to pay penalties (additional ten percent of the loss plus attorneys' fees) asserting that the clause "registered lifting or supporting capacity" was ambiguous as a matter of law and that Michigan Mutual's failure to pay violated, *inter alia,* paragraph fourteen of the policy which provides:

14. SETTLEMENT OF CLAIMS. All adjusted claims shall be paid or made

---

**2.** Although the crane model had a maximum thirty-five ton capacity, it actually had 163 different capacities varying with the following factors: (1) whether outriggers are extended; (2) type of ground; (3) boom placement (length and angle); and (4) load weight and radius. In addition to the load itself, all pieces of equipment attached to the boom and load handling devices are considered part of the load and must be taken into account. The operator is to refer to the rated lifting capacities chart and notes thereto in the cab (provided by the manufacturer) for each configuration.

good to the Insured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of the Company.

Kloster's pretrial motion to strike Michigan Mutual's affirmative defense of the exclusion on these grounds was denied.

Stephens testified through deposition that he had operated cranes for more than twenty-five years, that the crane had a registered lifting or supporting capacity of thirty-five tons, and that he was picking up a steel column weighing less than one thousand pounds at the time of the tip-over. Specifically Stephens testified that the crane turned over because he was "working without the outriggers [extended]," that "this was a fault of my own," "a misjudgment on my part," "a mistake." He felt that the reason the crane tipped over was his misjudgment of "the angle of the boom and how far it was out," but not the weight of the load, and that the accident was due solely to operator error. Michigan Mutual's own expert, David Perry, who had been around cranes for twenty-two years, had never heard the term "registered lifting or supporting capacity" but knew what "lifting" and "load" capacities were.

Kloster's motions for a directed verdict at the close of its evidence and at the close of all the evidence on the grounds set forth· in its motion to strike, and on the vexatious damages issue, were denied. Upon being instructed over Kloster's objection that "registered lifting or supporting capacity" meant the lifting capacity of the crane as set forth in the rated lifting capacities chart, depending upon how the crane was being used (instruction No. 8), and that it was to return a verdict in favor of the defendant if it believed the loss was caused by the weight of a load exceeding the registered lifting or supporting capacity (instruction No. 10), the jury returned a verdict in favor of Michigan Mutual.

Kloster appeals, arguing that the district court erred in: (1) failing to sustain Kloster's motions to strike and for a directed verdict (a) because the exclusionary clause is ambiguous as a matter of law, (b) be-

cause Missouri law makes an insurer's interpretation of a clause binding upon it, or (c) because Michigan Mutual failed to settle the claim within sixty days of acceptance of the proof of loss; (2) giving Michigan Mutual's requested jury instruction Nos. 8 and 10; and (3) failing to direct a verdict for Kloster and in granting Michigan Mutual's motion for a directed verdict on the vexatious damages issue.

Insurance policies are to be given their reasonable interpretations. *State Farm Mut. Auto. Ins. Co. v. Thomas*, 549 S.W.2d 616, 617 (Mo.Ct.App.1977). A policy is ambiguous if, construed as a whole, it is reasonably susceptible of more than one meaning. *Kay v. Metropolitan Life Ins. Co.*, 548 S.W.2d 629, 631 (Mo.Ct.App.1977); *Howard v. Russell Stover Candies, Inc.*, 649 F.2d 620, 623 (8th Cir.1981). In construing any policy, courts are to adopt the construction that gives effect or meaning to the language of each clause. *See Home Indem. Co. v. Miller*, 399 F.2d 78, 81–82 (8th Cir.1968).

■ Kloster points out that the clause has been found ambiguous as a matter of law in Iowa, Texas, and Wisconsin, citing *M–Z Enters., Inc. v. Hawkeye–Security Ins. Co.*, 318 N.W.2d 408 (Iowa 1982); *M–C Indus., Inc. v. Federal Ins. Co.*, 562 S.W.2d 30, 31 (Tex.Civ.App.1978); and *Hooper Constr. Corp. v. Employers Ins.*, 324 N.W.2d 823, 107 Wis.2d 753 (Wis.Ct.App. 1982). Michigan Mutual attempts to discredit these cases, and instead relies on a New Jersey case in which the language was not found ambiguous, *United Rental Equip. Co. v. Aetna Life and Casualty Ins. Co.*, 376 A.2d 1183, 1185, 74 N.J. 92 (1977) (language "refers to manufacturer's suggested capability as indicated on a chart posted in the cab of the crane to guide the operator"). However, when the district court decides a question of state law on which the state courts have not yet expressed a view, we give deference to that decision. *Kansas State Bank of Holton v. Citizens Bank of Windsor*, 737 F.2d 1490, 1496 (8th Cir.1984).

■ We find Kloster's argument that it should prevail because several witnesses

believed the crane had an across-the-board capacity of thirty-five tons to be specious. Rather, we find Stephens' testimony that he was aware of load limitations and that the crane overturned because he did not use outriggers and misjudged the boom angle and length, to be much more important. The district court's rulings reflect a realistic view of this testimony, and its failure to grant a directed verdict shows recognition and application of the basic principles of crane operation to the policy's language. Any other interpretation would be untenable, effectively eliminating the exclusion from the policy.

■ Kloster also contends that Michigan Mutual is bound by its earlier acknowledgements of coverage and that the exclusion in question did not apply, whereas Michigan Mutual refers to these as initial reports or recommendations that are often unreliable. Kloster further argues that Michigan Mutual is estopped from later asserting the exclusionary clause, and that Kloster detrimentally relied on Michigan Mutual's earlier indications of coverage by not conducting its own investigation. This argument fails when examined in the light of the false information provided to the insurer by the insured.

Kloster urges that the district court's charge to the jury on the meaning of "registered lifting or supporting capacity" was not supported by the evidence and thus constituted prejudicial error. A party is entitled to an instruction reflecting the party's theory of the evidence if the instruction is legally correct and there is evidence to support it. *Board of Water Works Trustees v. Alvord, Burdick & Howson*, 706 F.2d 820, 823 (8th Cir.1983).

The definition given the jury in instruction No. 8 is similar to the language used in *United Rental, supra*, 376 A.2d at 1185. We believe the district court gave correct instructions both to express the intent of the exclusionary clause and to make it readily understandable to the jury. Finding no error, we uphold the instructions.

Finally, Kloster raises the issue of whether vexatious damages were warranted. This argument fails since we have upheld the jury verdict that the policy did not cover this loss.

We have examined the other arguments of the appellant and find them without merit.

Accordingly, the district court's order is affirmed.