**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0723-17T3

ANTHONY V. OTTILIO,
individually, and OTTILIO
PROPERITES, LLC,

     Plaintiffs-Appellants,

v.

VALLEY NATIONAL BANCORP,
VALLEY NATIONAL BANK,
SAR 1, INC., GERALD H. LIPKIN,
MICHAEL GHABRIAL, JOHN CINA,
ANDREW B. ABRAMSON, ROBERT C.
SOLDOVERI, HANS KRETSCHMAN,
FORTRESS HOLDINGS, LLC, ALFRED
SORRENTINO, JR., and GENOVA
BURNS GIANTOMASI WEBSTER,[1]

     Defendants-Respondents.

_____

Submitted December 10, 2018 – Decided April 3, 2019

Before Judges Messano, Fasciale and Rose.

_____

[1] The order on appeal captions respondent Genova Burns, LLC f/k/a Genova Burns Giantomasi Webster as Genova Burns Giantomasi Webster.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1403-14.

Kenneth J. Rosellini, attorney for appellants.

Lowenstein Sandler, LLP, attorneys for respondents Valley National Bancorp, Valley National Bank, SAR 1, Inc., Gerald H. Lipkin, John Cina, Andrew B. Abramson, Robert C. Soldoveri and Alfred Sorrentino, Jr. (Richard S. Thompson, of counsel and on the brief).

Greenberg Dauber Epstein & Tucker, PC, attorneys for respondent Genova Burns, LLC, f/k/a Genova Burns Giantomasi Webster (Edward J. Dauber and Sheryl L. Reba, on the brief).

Ansell Grimm & Aaron, PC, attorneys for respondent Hans Kretschman (James G. Aaron, on the brief).

Del Sardo & Montanari, LLC, attorneys for respondent Fortress Holdings, LLC (Darren J. Del Sardo, on the brief).

PER CURIAM

In 2011, Valley National Bank (VNB) successfully foreclosed on properties owned by Anthony V. Ottilio and his company, Ottilio Properties, LLC (collectively, plaintiffs). VNB acquired the properties at multiple sheriff's sales and conveyed them to its subsidiary, defendant SAR 1, Inc. (SAR), and defendants Fortress Holdings, LLC (Fortress) and Hans Kretschman.

In November 2013, plaintiffs filed a complaint in federal district court against VNB, its parent company, Valley National Bancorp, and VNB officers

2

and directors, John Cina, Andrew B. Abramson and Robert C. Soldoveri. Also named as defendants were VNB's former senior vice president, Michael Ghabrial, who was in charge of bank-owned real estate and allegedly used his position to solicit bribes, and Alfred Sorrentino, Jr., a VNB officer who allegedly provided financial advice to plaintiffs. Plaintiffs also named as defendants the law firm of Genova Burns Giantomasi Webster (Genova), which represented plaintiffs in the mortgage transactions, and Kretschman.

The complaint alleged that defendants engaged in a corrupt scheme to defraud plaintiffs and obtain their properties in violation of the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, and New Jersey's RICO statute, N.J.S.A. 2C:41-1 to -6.2. The complaint also pled causes of action for common law fraud, violations of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -210, personal liability based on fraud, tortious interference with prospective business relationships and existing contracts, slander of title, and intentional infliction of emotional distress. Genova and the Valley Defendants[2] moved to dismiss the complaint.

---

[2] For the balance of the opinion, we refer to VNB, its affiliated entities, and its officers and directors, except Ghabrial, as the Valley Defendants.

The district court judge granted those motions, concluding that plaintiffs failed to plead their federal RICO claims with sufficient particularity. The judge noted the complaint failed to allege predicate acts of racketeering because it "fail[ed] to specify which defendant made an alleged misrepresentation and for what purpose, when the misrepresentation was made, or how the misrepresentations . . . deprived [plaintiffs] of their property." The judge further concluded that the complaint "failed to properly allege a pattern of racketeering activity," because it alleged a "violation arising out of a single scheme directed only at [p]laintiffs." The judge declined to exercise supplemental jurisdiction over plaintiffs' state law claims.[3]

Plaintiffs then commenced this action in the Law Division. The amended complaint, filed in October 2014, alleged the same causes of action as the federal complaint, minus the federal RICO claim, and added a cause of action for unjust enrichment against the Valley Defendants and Fortress.[4]

---

[3] Plaintiffs appealed, and the Court of Appeals affirmed the decision. Ottilio v. Valley Nat'l Bancorp, 591 F. App'x 167 (3d Cir. 2015).

[4] The amended complaint added Gerald H. Lipkin, VNB's Chairman, President and CEO, as a defendant, as well as the related entity, SAR, and Fortress as defendants. Our references to the Valley Defendants include Lipkin and SAR.

4

The essence of the complaint was that the Valley Defendants conspired to foreclose on plaintiffs' properties, using cross-collateralization provisions in the underlying documents. Plaintiffs claimed Genova failed to follow their instructions in drafting a 2007 refinance agreement as a "stand-alone" mortgage, and that Genova obtained legal work from VNB in exchange for participating in the scheme. Plaintiffs alleged that the individual Valley Defendants engaged in a fraudulent scheme to obtain the properties at less-than-market value, mismanaged monies held in trust for plaintiffs, and VNB interfered with plaintiffs' ability to obtain other financing when they were in financial distress. Plaintiffs alleged Kretschman was a VNB "insider," to whom the bank supplied information that enabled him to obtain one of the properties at below-market value. Plaintiffs' unjust enrichment count alleged the Valley Defendants and Fortress obtained the beneficial use of a sewer easement in favor of the foreclosed property transferred to Fortress because the sewer line ran under adjacent property owned by plaintiffs since 2011.

The Valley Defendants and Genova moved to dismiss the complaint. In a comprehensive written opinion, the judge recapped prior litigation between plaintiffs and defendants. He noted that plaintiffs never opposed VNB's 2010 motion for summary judgment, which sought a money judgment on the loans

5

VNB made to plaintiffs. He held that plaintiffs conceded the "entire controversy doctrine preclude[d] all claims . . . that accrued prior" to that judgment.

The judge also observed that plaintiffs made the same allegations against the Valley Defendants and Genova when they moved to vacate the foreclosure judgment and stay the sheriff's sales. He said: "These allegations were considered and rejected by the [c]ourt," and, as a result, "the doctrine of collateral estoppel bars [p]laintiffs from raising these issues in the instant action." The judge noted that the Bankruptcy Court dismissed plaintiffs' two petitions attempting to forestall the foreclosure and found they were filed in bad faith.

The judge cited to Reid v. Reid, 310 N.J. Super. 12, 19 (App. Div. 1998), and determined plaintiffs' state RICO claims were barred by res judicata. He reasoned that most of the other counts of the complaint were "barred by collateral estoppel, res judicata, and the entire controversy doctrine." The judge also concluded that, assuming arguendo these principles did not bar plaintiffs' slander of title count, "the claim would still be barred by the applicable statute of limitations." The judge granted Genova's motion and dismissed the complaint with prejudice; he also dismissed the complaint with prejudice as to the Valley Defendants, except for the unjust enrichment count.

A-0723-17T3

Several months later, the Valley Defendants and Fortress moved for summary judgment on the unjust enrichment count. The judge granted Fortress's motion. He also concluded that plaintiffs failed to demonstrate VNB had been unjustly enriched. The judge noted plaintiffs' encumbered rights in the easement to VNB pursuant to the governing mortgage documents. This appeal follows.[5]

Plaintiffs contend that none of their claims are barred by res judicata, collateral estoppel or the entire controversy doctrine, particularly because of jurisdictional limitations imposed upon foreclosure proceedings in New Jersey. They also contend there are significant differences between federal RICO claims and those cognizable under our RICO statute, such that the federal district court's judgment has no preclusive effect on their state RICO claims. Lastly, plaintiffs argue their amended complaint adequately stated common law claims not precluded by any prior litigation.

We disagree with most of these arguments. However, we conclude some of plaintiffs' claims were adequately pled in the amended complaint and may not

---

[5]  Plaintiffs entered into consent orders vacating defaults previously entered against Ghabrial and Kretschman. Both then moved to dismiss. The judge granted those motions, concluding that "the doctrines of collateral estoppel, res judicata, and the entire controversy doctrine bar" plaintiffs' claims, except for slander of title and unjust enrichment. Concerning those counts, the judge held that plaintiffs "have failed to plead anything other than general conclusory allegations in support of th[ese] claim[s]."

be precluded. We therefore affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.

"The standard a trial court must apply when considering a Rule 4:6-2(e) motion to dismiss a complaint for failure to state a claim upon which relief can be granted is 'whether a cause of action is "suggested" by the facts.'" Teamsters Local 97 v. State, 434 N.J. Super. 393, 412 (App. Div. 2014) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). Despite this liberal standard, "[a] pleading should be dismissed if it states no basis for relief and discovery would not provide one." Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 113-14 (App. Div. 2011) (citing Camden Cty. Energy Recovery Assocs., LP v. N.J. Dep't of Envtl. Prot., 320 N.J. Super. 59, 64 (App. Div. 1999)). In addition, "dismissal is mandated where the factual allegations are palpably insufficient to support a claim upon which relief can be granted." Rieder v. State, 221 N.J. Super. 547, 552 (App. Div. 1987). We review the trial court's decision de novo. Flinn v. Amboy Nat'l Bank, 436 N.J. Super. 274, 287 (App. Div. 2014).

We review the grant of summary judgment applying the same standard as the trial judge. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of

Pittsburgh, 224 N.J. 189, 199 (2016) (citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Ibid. (quoting R. 4:46-2(c)).

To determine whether there are genuine issues of material fact, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). "An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande v. St. Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).

Res judicata "contemplates that when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation."

Adelman v. BSI Fin. Servs., Inc., 453 N.J. Super. 31, 39 (App. Div. 2018) (quoting Lubliner v. Bd. of Alcoholic Beverage Control for Paterson, 33 N.J. 428, 435 (1960)). "The application of res judicata . . . requires substantially similar or identical causes of action and issues, parties, and relief sought." Walker v. Choudhary, 425 N.J. Super. 135, 151 (App. Div. 2012) (quoting Culver v. Ins. Co. of N. Am., 115 N.J. 451, 460 (1989)). "To be accorded res judicata effect, a judicial decision 'must be a valid and final adjudication on the merits of the claim.'" Id. at 150 (quoting Velasquez v. Franz, 123 N.J. 498, 506 (1991)).

"Collateral estoppel . . . represents the 'branch of the broader law of res judicata which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action.'" Tarus v. Borough of Pine Hill, 189 N.J. 497, 520 (2007) (quoting Sacharow v. Sacharow, 177 N.J. 62, 76 (2003)). "Although collateral estoppel overlaps with and is closely related to res judicata, the distinguishing feature of collateral estoppel is that it alone bars relitigation of issues in suits that arise from different causes of action." Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 173 (App. Div. 2000) (citing United Rental Equip. Co. v. Aetna Life & Cas. Ins. Co., 74 N.J. 92, 101 (1977)).

10

For the doctrine of collateral estoppel to apply to foreclose the relitigation of an issue, the party asserting the bar must show that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

[Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006) (quoting In re Estate of Dawson, 136 N.J. 1, 20-21 (1994)).]

"Even where these requirements are met, the doctrine, which has its roots in equity, will not be applied when it is unfair to do so." Id. at 521-22 (quoting Pace v. Kuchinsky, 347 N.J. Super. 202, 215 (App. Div. 2002)).

Finally,

[t]he entire controversy doctrine [(ECD)], codified in Rule 4:30A, . . . "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy."

[Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 604-05 (2015) (quoting Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009))].

"The entire controversy doctrine, however, is constrained by principles of equity[ and] 'does not apply to unknown or unaccrued claims.'" Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, ___ N.J. ___, ___ (2019) (slip op. at 3) (quoting Wadeer, 220 N.J. at 606).

We apply these principles to the case at hand.

II.

RICO claims

A plaintiff must prove five elements to sustain a claim under New Jersey's RICO statute:

> (1) the existence of an enterprise; (2) that the enterprise engaged in or its activities affected trade or commerce; (3) that defendant was employed by, or associated with the enterprise; (4) that he or she participated in the conduct of the affairs of the enterprise; and (5) that he or she participated through a pattern of racketeering activity.
>
> [State v. Ball, 268 N.J. Super. 72, 99 (App. Div. 1993) (Ball I), aff'd, 141 N.J. 142 (1995).]

"[U]nder the RICO Act 'enterprise' is an element separate from the 'pattern of racketeering activity' . . . ." Ball, 141 N.J. at 161-62.

> [T]he enterprise . . . must have an "organization." The organization of an enterprise need not feature an ascertainable structure or a structure with a particular configuration. The hallmark of an enterprise's

12

organization consists rather in those kinds of interactions that become necessary when a group, to accomplish its goal, divides among its members the tasks that are necessary to achieve a common purpose. <u>The division of labor and the separation of functions undertaken by the participants serve as the distinguishing marks of the "enterprise"</u> because when a group does so divide and assemble its labors in order to accomplish its criminal purposes, it must necessarily engage in a high degree of planning, cooperation and coordination, and thus, in effect, constitute itself as an "organization."

[<u>Id.</u> at 162 (emphasis added).]

Under our statute, "[a] 'pattern of racketeering activity' requires '[e]ngaging in at least two incidents of racketeering conduct' that 'embrace criminal conduct' and are interrelated." <u>Mayo, Lynch & Assocs., Inc. v. Pollack</u>, 351 N.J. Super. 486, 495 (App. Div. 2002) (second alteration in original) (quoting N.J.S.A. 2C:41-1(d)).

To establish a RICO conspiracy, a plaintiff must show that (1) "a defendant agreed to participate directly or indirectly in the conduct of the affairs of the enterprise by agreeing to commit, or to aid other members of the conspiracy to commit, at least two racketeering acts[,]" and (2) the defendant "acted <u>knowingly and purposely with knowledge of the unlawful objective of the conspiracy</u> and with the intent to further its unlawful objective." <u>Ball</u>, 141 N.J. at 180 (emphasis added) (quoting <u>Ball I</u>, 268 N.J. Super. at 99-100).

13

We acknowledge, as plaintiffs urge, that our statute is "broader in scope than the federal [RICO] statute." Ball I, 268 N.J. Super. at 107. Plaintiffs contend this means the federal district court's decision is not entitled to preclusive effect. They also argue that they only became aware of Ghabrial's multiple crimes after the federal action was dismissed, and, unlike the federal complaint, they have now alleged multiple instances of racketeering activity in the amended complaint. Neither of these assertions is significant.

The amended complaint alleges in conclusory terms "defendants acted in concert . . . ." Although there are some factual allegations regarding Ghabrial's activities, the amended complaint does not allege sufficient facts establishing an "enterprise" as defined in Ball. As to the RICO conspiracy count, the allegations are insufficient to prove both that defendants "acted knowingly and purposely" in the affairs of the enterprise and that they participated in the affairs "with knowledge of the unlawful objective of the conspiracy." Ball, 141 N.J. at 180. In short, the RICO claims were properly dismissed, not only because of the disposition of plaintiffs' federal complaint, but also because of the inadequacy of the pleading.[6] R. 4:6-2(e).

---

[6] As noted, Lipkin, SAR, and Fortress were not parties to the federal action, thus, res judicata does not apply. Nonetheless, the allegations in the amended complaint are inadequate as to them.

State Common Law and CFA Claims

The federal district court refused to exercise supplemental jurisdiction over plaintiffs' other state law claims. As such, res judicata does not apply to bar the claims. However, we agree with the motion judge that collateral estoppel and the ECD apply to bar most of them.

VNB obtained final judgment in the foreclosure action in August 2011. In January 2012, plaintiffs moved to adjourn the scheduled sheriff's sales and vacate the judgment. Plaintiffs' application for an order to show cause alleged: (1) VNB breached its fiduciary duty by mismanagement of monies held in trust; (2) VNB's officials, Abramson and Soldoveri, deceptively attempted to purchase plaintiffs' properties at below-market value; (3) VNB and Genova deceived plaintiffs into cross-collateralizing the loans; (4) VNB and Genova engaged in fraudulent schemes to take the properties away; and (5) VNB interfered with plaintiffs' effort to obtain new financing. The chancery court denied the requests to adjourn the foreclosure sales or vacate the previous judgment.

In their August 2011 petition in the Bankruptcy Court, plaintiffs alleged that Kretschman illegally tried to obtain funds from VNB to purchase one of their properties at an approaching auction sale at below-market value. The Bankruptcy Court dismissed plaintiffs' petition by finding that they filed it in

bad faith and remanded the case to the chancery court. In June 2012, plaintiffs filed a second petition in the Bankruptcy Court. In opposition to VNB's motion to dismiss, plaintiffs alleged VNB's misrepresentation of an upset price on one of the properties hindered plaintiffs' ability to reorganize under Chapter 11 of the Bankruptcy Code. The Bankruptcy Court dismissed the second petition.

In reviewing the Valley Defendants' and Genova's motions to dismiss, the judge delineated plaintiffs' factual assertions in support of the state law causes of action. It suffices to say that the facts asserted by plaintiffs in resisting foreclosure were nearly identical to those asserted in the amended complaint in support of their common law claims.

We reject plaintiffs' argument that they were unable to assert these facts in support of defenses or counterclaims in the foreclosure action. Pursuant to Rule 4:64-5, a party generally cannot assert non-germane claims in a foreclosure action and, therefore, the ECD does not work as a bar to those claims being asserted at a later date. Adelman, 453 N.J. Super. at 38. "To determine which types of claims are germane, 'a liberal rather than a narrow approach' should be used." Ibid. (quoting Leisure Tech.-Ne., Inc. v. Klingbeil Holding Co., 137 N.J. Super. 353, 358 (App. Div. 1975)). Our courts have held a variety of claims to be germane. See Delacruz v. Alfieri, 447 N.J. Super. 1, 12-21 (Law Div.

2015) (collecting cases). We have no doubt that plaintiffs could have asserted claims of fraud, for example, as defenses or counterclaims to VNB's foreclosure efforts, but they did not do so. Therefore, the ECD serves as an additional bar to much of what plaintiffs alleged in the amended complaint.

Plaintiffs argue that some facts alleged in the amended complaint had not occurred until after the foreclosure judgment was final, and, therefore, neither collateral estoppel nor the ECD bars claims that did not exist at the time the foreclosures were finalized.[7] For example, plaintiffs claim, without alleging specific dates, that VNB interfered with their ability to obtain financing elsewhere in order to redeem the foreclosed properties. Most significantly, plaintiffs' amended complaint details Ghabrial's 2013 conviction for bribery and asserts that he was involved in multiple criminal activities while in charge of VNB's commercial real estate department.

The motion judge generally did not consider whether these allegations, based on facts that occurred after the foreclosure judgment, could have supported any of the state law claims. We therefore are required to consider

---

[7] The complaint does not allege facts regarding Genova's conduct subsequent to the foreclosures. We conclude that the motion judge properly dismissed the complaint pursuant to collateral estoppel and the ECD as to Genova, and we affirm that order.

whether the amended complaint adequately pleads a common law cause of action against any defendant.

Fraud[8]

In order to establish a common law fraud claim, a plaintiff must demonstrate that a defendant "(1) made a representation or omission of a material fact; (2) with knowledge of its falsity; (3) intending that the representation or omission be relied upon; (4) which resulted in reasonable reliance; and that (5) plaintiff suffered damages." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 336 (App. Div. 2013) (citing Jewish Ctr. of Sussex Cty. v. Whale, 86 N.J. 619, 624 (1981)). The "particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable." R. 4:5-8(a). It suffices to say that plaintiffs' amended complaint is bereft of any post-foreclosure judgment particulars that adequately allege fraud. With the exception of Ghabrial, the third count of the amended complaint alleging fraud was properly dismissed.

---

[8] Plaintiffs' brief makes no argument regarding the dismissal of their consumer fraud claim (count four), the personal liability for fraud claim (count five), or the slander of title claim (count eight). An issue not briefed is deemed waived. Soc'y Hill Condo. Ass'n, Inc. v. Soc'y Hill Assocs., 347 N.J. Super. 163, 176 (App. Div. 2002).

Tortious Interference

To establish a claim for intentional interference with a prospective economic relationship, a plaintiff must show "(1) the existence of a reasonable expectation of economic advantage; (2) intentional and malicious interference with that expectation[;] (3) the interference caused [the] plaintiff to lose the prospective economic advantage; and (4) damage." Beck v. Tribert, 312 N.J. Super. 335, 352 (App. Div. 1998) (citing Printing Mart-Morristown, 116 N.J. at 751-52). The sixth count of plaintiffs' amended complaint alleged "[d]efendants intentionally and improperly . . . with malice, interfered with the reasonable expectation of economic advantage . . . [p]laintiffs would obtain by refinancing and redeeming the [p]laintiffs' income producing properties . . . ." Plaintiffs alleged that "th[e] interference caused no less than [twelve] prospective lenders" to refuse them credit or otherwise terminate negotiations. As already noted, the amended complaint does not allege specific dates, therefore, it is impossible to tell whether the alleged facts pre-date the final proceedings in foreclosure, and whether, regardless of the dates, plaintiffs could have asserted these facts as a defense or counterclaim in those proceedings.

As a result, we reverse the dismissal of this count as to the Valley Defendants and Ghabrial. Because this count makes no allegations regarding

the other defendants, we affirm as to them.

Plaintiffs' seventh count alleged that defendants acting intentionally and with malice "interfered with the performance of . . . [p]laintiffs' income producing leases with tenants . . . ."

> To establish a claim for tortious interference with contractual relations, a plaintiff must prove: (1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage.
>
> [Russo v. Nagel, 358 N.J. Super. 254, 268 (App. Div. 2003) (citing 214 Corp. v. Casino Reinvestment Dev. Auth., 280 N.J. Super. 624, 628 (Law Div. 1994))].

Here, it is quite clear that the factual underpinnings for the claim existed before and during the foreclosure proceedings, and there is no readily observable reason why those facts were not included in the constellation of allegations plaintiffs asserted throughout the foreclosure and bankruptcy litigation. Count seven was properly dismissed.

Intentional Infliction of Emotional Distress and Unjust Enrichment

In order to prove intentional infliction of emotional distress, a plaintiff must show:

> (1) defendant[s] acted intentionally; (2) defendant[s'] conduct was "so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community;" (3) defendant[s'] actions proximately caused him emotional distress; and (4) the emotional distress was "so severe that no reasonable [person] could be expected to endure it."

[Segal v. Lynch, 413 N.J. Super. 171, 191 (App. Div. 2010) (last alteration in original) (quoting Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988)).]

Litigation-induced stress is not actionable. Picogna v. Bd. of Educ. of Cherry Hill, 143 N.J. 391, 393 (1996).

The ninth count of plaintiffs' complaint alleged that defendants acted intentionally to "inflict deliberate emotional distress, psychological trauma, and psychic pain and suffering" on Anthony Ottilio. Although the motion judge did not address this particular count of plaintiffs' amended complaint, we conclude it fails to adequately plead a cause of action for this tort. Defendants' alleged conduct is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Nor does the amended complaint adequately allege the necessary severity of distress caused by the conduct. We affirm dismissal of count nine of the amended complaint.

The judge granted summary judgment as to the tenth count of the amended complaint, alleging VNB, Valley National Bancorp, SAR and Fortress were

unjustly enriched by an adverse utilities easement running through another property owned by plaintiffs. However, the record failed to prove the existence of the easement. Moreover, as the motion judge found, the underlying mortgage documents executed in 2002 encumbered plaintiffs' mortgaged property and "all other rights whatsoever that [plaintiffs] or any other owner has or may acquire in the [l]and," including easements. Therefore, as the judge properly concluded, plaintiffs cannot demonstrate defendants were unjustly enriched beyond contractual rights provided by the mortgage itself. Summary judgment was properly granted on the tenth count.

III.

In summary, we affirm the Law Division's January 13, 2015 order dismissing the amended complaint as to Genova; the April 1, 2016 orders granting summary judgment to the Valley Defendants and Fortress on the tenth count, alleging unjust enrichment; and the January 6, 2017 order dismissing the amended complaint as to Kretschman.

We affirm in part and reverse in part the Law Division's January 13, 2015 order granting partial summary judgment to the Valley Defendants. We affirm the dismissal as to all counts, except the sixth count, tortious interference with

prospective business relationships.  The matter is remanded to the trial court for further proceedings.

We hasten to add that our decision should not be interpreted as foreclosing the Valley Defendants, upon development of a more complete record, from seeking summary judgment by asserting plaintiffs' claim is barred by collateral estoppel or the ECD, i.e., that the factual underpinnings for the claim were asserted or could have been asserted in prior litigation.  On the record before us, we cannot definitively rule on that issue.

We affirm in part and reverse in part the Law Division's January 6, 2017 order dismissing the amended complaint as to Ghabrial.  We affirm the dismissal of all counts of the complaint, except count three, alleging common law fraud, and count six, alleging tortious interference with prospective business relationships.  We issue a similar caveat against an overly broad interpretation of our holding.  We only decide that plaintiffs' amended complaint as to those counts states causes of action against Ghabrial that, on the record before us, were not precluded as a matter of law by res judicata, collateral estoppel or the ECD.

Affirmed in part, reversed in part and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23

A-0723-17T3